[Cite as *State v. Jewett*, 2022-Ohio-2612.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 22CA3976 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Tyronn Jewett, | : | |
| Defendant-Appellant. | : | **RELEASED 7/26/2022** |

_____
<u>APPEARANCES</u>:

Tyronn Jewett, Caldwell, Ohio, pro se.

Shane A. Tieman, Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Tyronn Jewett appeals from a judgment of the Scioto County Common Pleas Court denying his petition for postconviction relief on the grounds that it was untimely and barred by res judicata. In his first assignment of error, Jewett contends the trial court erred when it found his petition was untimely. However, Jewett filed his petition after the expiration of the statutorily prescribed period and failed to demonstrate the existence of facts necessary for the trial court to exercise jurisdiction over the merits of the untimely petition. Therefore, the trial court correctly found that his petition was untimely, though it technically erred by denying the petition rather than dismissing it for lack of jurisdiction. Accordingly, we overrule the first assignment of error and affirm the

judgment of the trial court as modified to reflect dismissal of the petition.  This decision renders moot Jewett's remaining assignments of error, so we need not address them.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}    On April 16, 2015, the Scioto County grand jury returned a 46-count indictment against Jewett and 23 other defendants.  The indictment charged Jewett with 41 counts and various specifications.  A jury returned verdicts finding Jewett guilty of 33 of the counts and various specifications. On September 22, 2015, the trial court sentenced Jewett to an aggregate prison term of 40 years, with 16 years being mandatory.  Jewett filed a direct appeal of the judgment of conviction, and we affirmed it. *State v. Jewett*, 4th Dist. Scioto No. 15CA3714, 2017-Ohio-2891.  Jewett then appealed to the Supreme Court of Ohio, which declined to accept jurisdiction.  *State v. Jewett*, 150 Ohio St.3d 1444, 2017-Ohio-7843, 82 N.E.3d 1177.

{¶3}    On June 8, 2015, Jewett filed a petition for habeas corpus in the United States District Court for the Southern District of Ohio.  *Jewett v. Warden*, S.D.Ohio No. 1:18-cv-406, 2020 WL 5960913, *4 (Oct. 8, 2020).  A magistrate judge recommended that the district court dismiss the petition.  *Id.* at *5.  On October 3, 2019, Jewett filed objections to the recommendation and a document captioned "Newly Discovered Evidence" in which he appeared to allege that the judge who presided over his criminal trial, now-retired Scioto County Common Pleas Court Judge William Marshall, had a substance abuse problem.  *Id.* at *5, 9.  On October 8, 2020, the district court issued an opinion and order overruling Jewett's objections and adopting the magistrate judge's recommendation as to the issues it addressed.  *Id.* at *1.  The district court treated Jewett's "Newly Discovered Evidence" filing as a motion to amend his habeas petition to

add a due process claim, granted the motion, and stayed further consideration of the petition "to allow Jewett the opportunity to exhaust his claim in state court." *Id.* at *11.

**{¶4}**   On February 22, 2021, Jewett filed a petition for postconviction relief "pursuant to R.C. 2953.23(A)(1)."  Jewett alleged that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief.   Jewett claimed that he had been denied due process and a fair trial because Judge Marshall "complained of being tired during trial, and made numerous unsound evidentiary decisions due to suffering from 'long-term abuse of alcohol' called 'alcohol encephalopathy,' also known as 'wet brain.' "  Jewett asserted that if he had known about Judge Marshall's alcoholism, he would have "motioned for recusal."  In addition, Jewett asserted that his trial counsel was ineffective for not moving for Judge Marshall's recusal because counsel should have known that Judge Marshall had been "convicted of DUI," had been "in rehab," and was publicly reprimanded by "disciplinary counsel" on April 1, 2015. Jewett claimed Judge Marshall "was clearly incapable of making impartial evidentiary decisions."

**{¶5}**   Jewett attached a number of documents to his petition.  There are excerpts from the trial transcript.  There are two WSAZ news articles from January 2013 about Judge Marshall's arrest for operating a vehicle under the influence ("OVI") after crashing his car.  There is a copy of *Disciplinary Counsel v. Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110 ("*Marshall*"), an April 1, 2015 decision of the Supreme Court of Ohio.  The decision states that Judge Marshall pleaded guilty to the OVI charge on March 8, 2013, was sentenced to 90 days in jail, with 87 days suspended, and was placed on unsupervised probation for up to 60 months.  *Marshall* at ¶ 3.  The Supreme Court of

Ohio "publicly reprimanded" Judge Marshall for violating two Ohio Code of Judicial Conduct rules by operating a motor vehicle under the influence of alcohol. *Id.* at ¶ 8. In selecting this sanction, the court noted that Judge Marshall had "voluntarily contacted the Ohio Lawyers Assistance Program ("OLAP") to address his alcoholism." *Id.* at ¶ 6.

{¶6} There is a May 15, 2019 Cincinnati Enquirer article which discusses a February 2019 guardianship case Judge Marshall's family filed to have him found incompetent and take control of his personal and financial affairs. The article states that according to "[l]egal experts," cases overseen by Judge Marshall "could now be called into question because his family is now accusing him of coming to work drunk." There is a June 13, 2019 Cincinnati Enquirer article which also discusses the "allegations" of Judge Marshall's alcoholism. The article states that "probate court documents" in the guardianship case "which were recently unredacted after The Enquirer threatened legal action, show how severe Marshall's alcoholism had progressed earlier this year." According to the article, a "court-appointed investigator wrote that Marshall suffered from alcoholic encephalopathy and 'wet brain,' a condition brought on by extreme drinking that limits the brain's ability to * * * function even when the subject is sober." The article states that court documents indicate that Judge Marshall was "first hospitalized for alcoholism" in 2013 and "was hospitalized for his addiction at least three times after 2013 when he crashed his car and was convicted for driving under the influence." The article also states that the Supreme Court of Ohio "reprimanded Marshall for the incident and his court sentence included mandatory rehab." The petition attachments also include a copy of the 2019 motion for emergency guardianship and a partial copy of an affidavit in which Judge Marshall's mother purportedly averred that in the five preceding years, Judge Marshall

"entered substance abuse rehab centers on three different occasions" and "reportedly has had many occasions where he * * * showed up to work while under the influence." She also purportedly averred that he was hospitalized in January 2019 "for being in an alcohol induced coma. He has been diagnosed as suffering from alcohol encephalopathy and hepatic encephalopathy."

**{¶7}** The attachments also include a June 16, 2019 Fox News article which discusses information the Cincinnati Enquirer reported about Judge Marshall. There is September 5, 2019 Cincinnati Enquirer article about Judge Marshall crashing his truck and RV trailer and being charged with operating a vehicle without reasonable control. Finally, there is an April 21, 2020 article from The Daily Independent which discusses Judge Marshall's failed bid to have his law license reinstated following a February 2019 suspension for misconduct related to a traffic ticket his daughter received. The article mentions the 2015 public reprimand and states that "[r]ecords from that case show following the [2013] crash, Marshall checked [into] detox, then attended a treatment program at the Cleveland Clinic. After a brief relapse, he checked into a local treatment program."

**{¶8}** On April 15, 2021, the trial court issued a judgment entry denying Jewett's petition on the grounds that it was untimely and barred by res judicata. On August 6, 2021, Jewett filed a "motion to issue judgment entry" asserting that the clerk of courts never served him with notice of the April 15, 2021 judgment entry and asking the court to reissue the entry so that he could appeal it. The docket contains no notation of service of the April 15, 2021 judgment entry prior to Jewett filing this motion.

**{¶9}** On January 4, 2022, the trial court granted Jewett's motion and ordered the clerk to reissue the April 15, 2021 entry pursuant to Civ.R. 58(B) and serve Jewett and the prosecutor's office. The docket indicates that the clerk complied with this order and served Jewett by certified mail on January 4, 2022. Jewett timely filed his notice of appeal on January 27, 2022, i.e., within 30 days of the date when the clerk actually completed service. *See* App.R. 4(A)(1) and (A)(3).

## II.  ASSIGNMENTS OF ERROR

**{¶10}** Jewett presents four assignments of error:

**Assignment of Error Number One:**  The trial court erred when it determined that Appellant's petition for postconviction relief was untimely.

**Assignment of Error Number Two:**  The trial court erred in denying appellant's petition for postconviction relief on the basis of res judicata.

**Assignment of Error Number Three:**  The appellant was denied the effective assistance of counsel.

**Assignment of Error Number Four:**  The appellant was denied a trial by a sober, fair, and impartial judge.

## III.  LAW AND ANALYSIS

**{¶11}** In his first assignment of error, Jewett asserts that the trial court erred when it determined his petition for postconviction relief was untimely. Jewett concedes he filed the petition after the expiration of the period prescribed in R.C. 2953.21(A)(2) but asserts that the trial court had jurisdiction to consider his petition under R.C. 2953.23(A)(1) because he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief. Jewett asserts that even in the exercise of due diligence he could not have discovered that Judge Marshall went to rehab after a 2013 drunk driving incident, was hospitalized for alcohol addiction at least three times after 2013, and that

by 2019, he was allegedly suffering from alcoholic encephalopathy. Jewett asserts that he was "not privy" to Judge Marshall's medical history and that he was not privy to information about Judge Marshall's vehicle wrecks in 2013 and 2019 and "other alcohol related events that took place between 2013 and 2019" because he was incarcerated. Jewett suggests no one could have known about Judge Marshall's "accident while under the influence, sentence to probation and rehab as well as other stents in rehab, and his diagnosis of alcoholic encephalopathy until it was made public by way of a trial judge assigning an investigator to obtain the facts of his DUI and medical documents" and releasing the information to the media in 2019. Jewett asserts that "no one can simply obtain someone's medical records/history" and that "cases and disciplinary actions taken against judges are not so openly shared with the public, especially not with the incarcerated."

{¶12} R.C. 2953.21(A)(1)(a)(i) authorizes "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to file a petition for postconviction relief.[1] "R.C. 2953.21(A)(2)(a) requires an individual to file a postconviction petition within (1) 365 days from the date on which the trial transcript was filed in the court of appeals in the direct appeal of the judgment of conviction; or (2) 365 days after the expiration of the time for filing the notice of appeal, if no direct appeal is taken."[2] *State v. Brown*, 4th Dist. Scioto No. 20CA3917, 2022-Ohio-519, ¶ 8. Jewett filed a direct appeal, and according to the docket in that case, the trial transcript was filed in this court in two batches on separate

---

[1] This provision appeared in R.C. 2953.21(A)(1)(a) at the time Jewett filed his petition.
[2] This provision appeared in R.C. 2953.21(A)(2) at the time Jewett filed his petition.

dates, the last date being May 16, 2016. Jewett filed his petition well over 365 days later, on February 22, 2021.

{¶13} A court may not entertain a petition filed after the expiration of the period prescribed in R.C. 2953.21(A) unless R.C. 2953.23(A)(1) or (2) applies. R.C. 2953.23(A). Jewett's argument implicates only R.C. 2953.23(A)(1), which authorizes a trial court to entertain an untimely petition if

> [b]oth of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *.

"A trial court lacks jurisdiction to consider an untimely * * * petition if the petitioner fails to satisfy the R.C. 2953.23(A)(1)(a) and (b) conditions." *Brown* at ¶ 10, citing *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36. "Whether a trial court possesses jurisdiction to entertain an untimely * * * postconviction petition is a question of law that appellate courts review independently and without deference to the trial court." *Id.* at ¶ 10, citing *Apanovitch* at ¶ 24.

{¶14} With respect to the R.C. 2953.23(A)(1)(a) condition, Jewett does not argue that the United States Supreme Court recognized a new federal or state right that applies retroactively to him but instead argues that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief. " 'A defendant is

"unavoidably prevented" from the discovery of facts if he had no knowledge of the existence of those facts and could not have, in the exercise of reasonable diligence, learned of their existence within the time specified for filing his petition for postconviction relief.' " *Id.* at ¶ 9, quoting *State v. Cunningham*, 2016-Ohio-3106, 65 N.E.3d 307, ¶ 19 (3d Dist.). "Moreover, '[t]he "facts" contemplated by [R.C. 2953.23(A)(1)] are the historical facts of the case, which occurred up to and including the time of conviction.' " (First alteration sic.) *Id.*, quoting *State v. Williamitis*, 2d Dist. Montgomery No. 21321, 2006-Ohio-2904, ¶ 18.

{¶15} "We have previously held that a postconviction petitioner's discovery of the former Scioto County Common Pleas Court judge's alleged misconduct does not constitute newly-discovered evidence within the meaning of R.C. 2953.23." *Id.* at ¶ 11, citing *State v. Williams*, 4th Dist. Scioto No. 19CA3895, 2020-Ohio-7035. In *Williams*, the petitioner was convicted in 2013 following a guilty plea, and Judge Marshall was the presiding judge. *See Williams* at ¶ 3-4. The petitioner filed an untimely petition for postconviction relief, which the trial court denied. *Id.* at ¶ 3, 11. We affirmed, though we observed that the trial court erred by denying the petition rather than dismissing it. *Id.* at ¶ 15. The petitioner relied on a May 15, 2019 Cincinnati Enquirer article discussing allegations that Judge Marshall had been part of a sex trafficking operation and gone to work intoxicated. *Id.* at ¶ 4. We concluded that the petitioner failed to allege, let alone show, that he was unavoidably prevented from discovering Judge Marshall's drinking problem or the allegations of sex trafficking prior to the deadline for filing his petition. *Id.* at ¶ 12. In doing so, we observed that the article stated that Judge Marshall was arrested for OVI sometime in 2013 and "the allegations suggested that the sex trafficking had been

occurring for some time." *Id.* We also found that the petitioner failed to reach "the threshold of clear and convincing evidence that there is a constitutional infirmity regarding his plea bargain." *Id.* at ¶ 13. In doing so, we stated that " '[n]ewspaper articles are generally inadmissible as evidence of the facts stated in them.' " *Id.* at ¶ 13, quoting *In re Waste Technologies Industries*, 132 Ohio App.3d 145, 155, 724 N.E.2d 819 (10th Dist.). We also stated that there was "no specific allegation, let alone any evidence, that Judge Marshall had been drinking on any of the days he was involved with Appellant's case." *Id.* at ¶ 13.

**{¶16}** In *Brown*, the petitioner was convicted in 2013 following a jury trial, and Judge Marshall had been the presiding judge. *Brown*, 4th Dist. Scioto No. 20CA3917, 2022-Ohio-519, at ¶ 2, 11. The trial court summarily overruled the petitioner's second untimely petition for postconviction relief. *Id.* at ¶ 3-5. We affirmed the trial court's judgment after modifying it to reflect dismissal of the petition. *Id.* at ¶ 14-15. In doing so, we explained that like the petitioner in *Williams*, the petitioner in *Brown* had attached to his petition "a 2019 news article that reported on Judge Marshall's alleged alcoholism and other misconduct." *Id.* at ¶ 11-12. We stated that "even if we were to consider the facts contained in the news article, that news article states that in 2013 Judge Marshall was hospitalized for alcoholism. Appellant has not established why he was unavoidably prevented from discovering at an earlier point in time that Judge Marshall apparently had an alcohol problem during the year of appellant's conviction." *Id.* at ¶ 12. We also stated that "[a]ttaching a 2019 news article reporting on the earlier events does not establish that appellant was unavoidably prevented from discovering the existence of Judge Marshall's alleged alcoholism so as to allow the trial court to consider appellant's second

postconviction relief petition." *Id.* In addition, we found that "even if Judge Marshall's conduct did create an issue of constitutional magnitude, appellant did not argue in his petition that, but for the constitutional error at trial, no reasonable finder of fact would have found him guilty." *Id.* at ¶ 13. Thus, the trial court lacked jurisdiction to consider the untimely petition. *Id.* at ¶ 14.

{¶17} Like the petitioners in *Williams* and *Brown*, Jewett failed to show that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief. In his petition, Jewett alleged that he was unavoidably prevented from discovering facts about Judge Marshall's alcohol problem but did not explain why. On appeal, Jewett argues it was because prior to 2019, the public did not have access to Judge Marshall's medical records/history or court records of legal proceedings against him and also because Jewett has been incarcerated. However, " '[a]n appellate court can only address those arguments presented to the trial court in the original petition; therefore, any new arguments cannot be considered for the first time on appeal.' " *State v. Thompson*, 4th Dist. Washington No. 08CA20, 2009-Ohio-200, ¶ 13, quoting *State v. Zamora,* 3d Dist. Paulding Nos. 11-08-04, 11-08-05, 2008-Ohio-4410, ¶ 26.

{¶18} Even if we were able to consider these new arguments, Jewett still has not shown that he was unavoidably prevented from discovering, prior to the petition for postconviction relief deadline, that Judge Marshall apparently had an alcohol problem during 2015, when Jewett was prosecuted and convicted. The documents attached to Jewett's petition indicate that as early as 2013, there has been publicly available information about Judge Marshall's alcohol problem. WSAZ reported on Judge Marshall's

OVI arrest in 2013, shortly after it occurred. The Daily Independent article indicates that there is information about Judge Marshall's treatment for alcoholism in the court records for the disciplinary case related to his OVI conviction. The documents attached to Jewett's petition also indicate that about two weeks before Jewett was indicted, the Supreme Court of Ohio issued a decision in the disciplinary case in which it *publicly reprimanded* Judge Marshall and mentioned him suffering from alcoholism and making efforts to address it. *Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110, at ¶ 6, 8.

{¶19} Jewett's suggestion that the public did not have access to this decision or court records in the 2013 OVI case or related disciplinary case prior to the deadline for him to file a petition for postconviction relief is not well-taken. The Supreme Court of Ohio's Rules for the Reporting of Opinions mandate that "[a]ll opinions of the Supreme Court shall be promptly posted to the Supreme Court website and reported in the advance sheets and bound volumes of the *Ohio Official Reports*." Rep.Op.R. 2.1. In addition, S.Ct.Prac.R. 3.02(A)(1)(b) states that "[d]ocuments filed with the Supreme Court shall be available for public access pursuant to Sup.R. 44 through 47." Under Sup.R. 45(A), "[c]ourt records are presumed open to public access." Although Sup.R. 45(E) authorizes a court to restrict public access in certain circumstances, nothing in Jewett's petition or attachments indicates public access to the court records in the 2013 OVI case or related disciplinary case was restricted prior to the deadline for him to file his petition. The June 13, 2019 Cincinnati Enquirer article suggests public access to the complete probate court records in the 2019 guardianship case was restricted until the Enquirer threatened legal action, but the article gives no indication of any restrictions on public access to any other

court records in legal proceedings against Judge Marshall. Moreover, Jewett offers no explanation as to how his incarceration prevented him from discovering the publicly available information about Judge Marshall's alcohol problem prior to the deadline for filing a postconviction relief petition.

**{¶20}** Jewett has also not shown that some of the facts upon which he relies are even " 'the historical facts of the case' " contemplated by R.C. 2953.23(A)(1). *Brown*, 4th Dist. Scioto No. 20CA3917, 2022-Ohio-519, at ¶ 9, quoting *Williamitis*, 2d Dist. Montgomery No. 21321, 2006-Ohio-2904, at ¶ 18. For instance, it is not clear from Jewett's petition when Judge Marshall was diagnosed with alcoholic encephalopathy. The partial affidavit of Judge Marshall's mother seems to imply the diagnosis occurred in January 2019, several years after Jewett was convicted, and it is not apparent how long Judge Marshall suffered from the condition. It is clear that other events, like the 2019 hospitalization and accident, occurred years after Jewett was convicted.

**{¶21}** Even if Jewett had shown that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief under R.C. 2953.23(A)(1)(a), he did not show that R.C. 2953.23(A)(1)(b) also applies. Even if Judge Marshall's conduct and trial counsel's failure to move for recusal created an issue of constitutional magnitude, Jewett's petition did not allege or show by clear and convincing evidence that but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offenses of which he was convicted. Jewett's appellate brief also neglects to address this requirement.

**{¶22}** Jewett's petition for postconviction relief was untimely, and he failed to establish that the trial court had jurisdiction to consider it under R.C. 2953.23(A)(1) or (2).

Therefore, we overrule his first assignment of error. However, we observe that the trial court " 'technically erred' " by denying the petition on the grounds of untimeliness and res judicata instead of dismissing it for lack of jurisdiction. *Brown* at ¶ 14, quoting *State v. McManaway*, 4th Dist. Hocking No. 16CA8, 2016-Ohio-7470, ¶ 16. Therefore, under App.R. 12(A)(1)(a), we modify the trial court's judgment to reflect the dismissal of Jewett's petition. *See id.* at ¶ 14 (modifying a judgment summarily overruling an untimely petition for postconviction relief to reflect dismissal of the petition). Our resolution of Jewett's first assignment of error renders moot his second, third, and fourth assignments of error, which relate to the trial court's res judicata finding and the merits of the petition for postconviction relief, so we need not address them. App.R. 12(A)(1)(c).

**{¶23}** For the foregoing reasons, we affirm the trial court's judgment as modified.

JUDGMENT AFFIRMED AS MODIFIED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED AS MODIFIED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
                Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**