[Cite as *State v. Jewett*, 2023-Ohio-969.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 22CA4004 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Tyronn Jewett, | : | **RELEASED 3/22/2023** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Tyronn Jewett, Caldwell, Ohio, pro se.

Shane A. Tieman, Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Tyronn Jewett appeals from a judgment of the Scioto County Common Pleas Court denying his motion for leave to file a motion for a new trial on the ground that Jewett failed to show that he was unavoidably prevented from discovering the evidence upon which he contends his conviction and sentence should be vacated. In his sole assignment of error, Jewett contends the trial court abused its discretion in denying him leave without an evidentiary hearing. However, Crim.R. 33 does not require the trial court to conduct an evidentiary hearing. Here the trial court made its determination based upon the merits of the motion and the attached documents. The documents Jewett submitted related to his trial judge's substance abuse dating back to 2013, two years prior to Jewett's indictment. Jewett failed to prove by clear and convincing evidence that he was

unavoidably prevented from the discovery of the evidence upon which he relies to support his motion; the trial court did not abuse its discretion when it denied his motion without an evidentiary hearing. We overrule the assignment of error and affirm the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY[1]

{¶2}   On April 16, 2015, the Scioto County grand jury returned a 46-count indictment against Jewett and 23 other defendants.  The indictment charged Jewett with 41 counts and various specifications.  A jury returned verdicts finding Jewett guilty of 33 of the counts and various specifications. On September 22, 2015, the trial court sentenced Jewett to an aggregate prison term of 40 years, with 16 years being mandatory.  Jewett filed a direct appeal of the judgment of conviction, and we affirmed it. *State v. Jewett*, 4th Dist. Scioto No. 15CA3714, 2017-Ohio-2891.  Jewett then appealed to the Supreme Court of Ohio, which declined to accept jurisdiction.  *State v. Jewett*, 150 Ohio St.3d 1444, 2017-Ohio-7843, 82 N.E.3d 1177.

{¶3}   In 2015, Jewett filed a petition for habeas corpus in the United States District Court for the Southern District of Ohio. *Jewett v. Warden*, S.D.Ohio No. 1:18-cv-406, 2020 WL 5960913, *4 (Oct. 8, 2020). Ultimately, the district court stayed further consideration of the petition so that Jewett could exhaust his state court remedies.  *Id.* at *11.

{¶4}   In February 2022, approximately four months after the district court's decision, Jewett filed a petition for postconviction relief "pursuant to R.C. 2953.23(A)(1)" in the Scioto County Court of Common Pleas.  Jewett alleged that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for

---

[1] The facts and procedural history are largely taken from *State v. Jewett*, 4th Dist. Scioto No. 22CA3976, 2022-Ohio-2612.

relief. Jewett claimed that he had been denied due process and a fair trial because Judge Marshall "complained of being tired during trial, and made numerous unsound evidentiary decisions due to suffering from 'long-term abuse of alcohol' called 'alcohol encephalopathy,' also known as 'wet brain.' " Jewett asserted that if he had known about Judge Marshall's alcoholism, he would have "motioned for recusal." In addition, Jewett asserted that his trial counsel was ineffective for not moving for Judge Marshall's recusal because counsel should have known that Judge Marshall had been "convicted of DUI," had been "in rehab," and was publicly reprimanded by "disciplinary counsel" on April 1, 2015. Jewett claimed Judge Marshall "was clearly incapable of making impartial evidentiary decisions."

{¶5} Jewett attached a number of documents to his petition for post-conviction relief. *Jewett*, 2022-Ohio-2612, ¶ 5-7. In *Jewett*, we described those documents as follows:

> There are excerpts from the trial transcript. There are two WSAZ news articles from January 2013 about Judge Marshall's arrest for operating a vehicle under the influence ("OVI") after crashing his car. There is a copy of *Disciplinary Counsel v. Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110 ("*Marshall*"), an April 1, 2015 decision of the Supreme Court of Ohio. The decision states that Judge Marshall pleaded guilty to the OVI charge on March 8, 2013, was sentenced to 90 days in jail, with 87 days suspended, and was placed on unsupervised probation for up to 60 months. *Marshall* at ¶ 3. The Supreme Court of Ohio "publicly reprimanded" Judge Marshall for violating two Ohio Code of Judicial Conduct rules by operating a motor vehicle under the influence of alcohol. *Id.* at ¶ 8. In selecting this sanction, the court noted that Judge Marshall had "voluntarily contacted the Ohio Lawyers Assistance Program ("OLAP") to address his alcoholism." *Id.* at ¶ 6.
>
> There is a May 15, 2019 Cincinnati Enquirer article which discusses a February 2019 guardianship case Judge Marshall's family filed to have him found incompetent and take control of his personal and financial affairs. The article states that according to "[l]egal experts," cases overseen by Judge Marshall "could now be called into question because his family is now

accusing him of coming to work drunk." There is a June 13, 2019 Cincinnati Enquirer article which also discusses the "allegations" of Judge Marshall's alcoholism. The article states that "probate court documents" in the guardianship case "which were recently unredacted after The Enquirer threatened legal action, show how severe Marshall's alcoholism had progressed earlier this year." According to the article, a "court-appointed investigator wrote that Marshall suffered from alcoholic encephalopathy and 'wet brain,' a condition brought on by extreme drinking that limits the brain's ability to * * * function even when the subject is sober." The article states that court documents indicate that Judge Marshall was "first hospitalized for alcoholism" in 2013 and "was hospitalized for his addiction at least three times after 2013 when he crashed his car and was convicted for driving under the influence." The article also states that the Supreme Court of Ohio "reprimanded Marshall for the incident and his court sentence included mandatory rehab." The petition attachments also include a copy of the 2019 motion for emergency guardianship and a partial copy of an affidavit in which Judge Marshall's mother purportedly averred that in the five preceding years, Judge Marshall "entered substance abuse rehab centers on three different occasions" and "reportedly has had many occasions where he * * * showed up to work while under the influence." She also purportedly averred that he was hospitalized in January 2019 "for being in an alcohol induced coma. He has been diagnosed as suffering from alcohol encephalopathy and hepatic encephalopathy."

The attachments also include a June 16, 2019 Fox News article which discusses information the Cincinnati Enquirer reported about Judge Marshall. There is September 5, 2019 Cincinnati Enquirer article about Judge Marshall crashing his truck and RV trailer and being charged with operating a vehicle without reasonable control. Finally, there is an April 21, 2020 article from The Daily Independent which discusses Judge Marshall's failed bid to have his law license reinstated following a February 2019 suspension for misconduct related to a traffic ticket his daughter received. The article mentions the 2015 public reprimand and states that "[r]ecords from that case show following the [2013] crash, Marshall checked [into] detox, then attended a treatment program at the Cleveland Clinic. After a brief relapse, he checked into a local treatment program."

*Id.*

{¶6} The trial court denied Jewett's petition on the grounds that it was untimely and barred by res judicata. Jewett appealed. We held, "Jewett failed to show that he was unavoidably prevented from discovery of the facts upon which he had to rely to present his claim for relief." *Jewett*, 2022-Ohio-2612, ¶ 17. We affirmed the trial court's decision,

modified to reflect a dismissal of the petition for lack of jurisdiction instead of a denial of it. *Jewett* at ¶ 22.

**{¶7}** In August 2022, a month after our decision was issued in his appeal of the denial of his postconviction petition, Jewett filed a motion for leave to file a motion for a new trial under Crim.R. 33(B) in the Scioto County Common Pleas Court. He submitted the same 2019 probate guardianship application and related news articles from 2019 that he previously submitted with his postconviction petition, which we described above. But, he did not submit the excerpts of trial transcripts from his September 2015 trial, the two WSAZ news articles from January 2013 reporting on Judge Marshall's arrest for OVI after crashing his car, or the copy of *Disciplinary Counsel v. Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110, issued on April 1, 2015 by the Supreme Court of Ohio, which states that Judge Marshall pleaded guilty to the OVI charge on March 8, 2013 and was publicly reprimanded by The Supreme Court of Ohio for violating two Ohio Code of Judicial Conduct rules by operating a motor vehicle under the influence of alcohol.

**{¶8}** The trial court denied his motion for leave to file a motion for a new trial, finding that "Defendant has not shown he was unavoidably prevented from discovering any credible, substantive facts upon which his convictions and sentence should be vacated."

**{¶9}** Jewett appealed.

## II.  ASSIGNMENT OF ERROR

**{¶10}** Jewett presents the following assignment of error:

The trial court abused its discretion in denying leave without an evidentiary hearing.

## III.  LAW AND ANALYSIS

{¶11}  Jewett asserts that the trial court erred when it denied his motion for leave to file a motion for new trial without holding an evidentiary hearing. He argues that he was required to, and did in fact, demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the evidence within 120 days of the verdict – the time by which a motion for new trial on account of newly discovered evidence must be filed under Crim.R. 33(B). He contends that the verdict was announced on September 8, 2015, the 120-day deadline expired on January 6, 2016, and he presented evidence from February 1, 2019 to September 5, 2019. Therefore, this evidence could not have been discovered back in late 2015 to early 2016. He contends, "at the very least, Jewett established entitlement to an evidentiary hearing on his motion for leave."

{¶12}  Because Jewett seeks a new trial seven years after his convictions, he must comply with Crim.R. 33(B)'s two-step process for filing an untimely motion. He must file a motion for leave to file a motion for new trial and he must show by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial. Clear and convincing evidence is proof that is more than a "mere preponderance of the evidence" but not of such certainty as "beyond a reasonable doubt," and produces in the mind a "firm belief or conviction" as to the facts sought to be established. *State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 42. We review the trial court's ruling for an abuse of discretion:

> Appellate review of a trial court's ruling on a motion for leave to file a motion for a new trial is conducted under an abuse-of-discretion standard. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

> When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave. The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial. (Citations omitted.)

*State v. Hatton*, __Ohio St.3d __, 2022-Ohio-3991, __ N.E.3d__, ¶ 29-30.

**{¶13}** "Crim.R. 33(B) does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence. The rule states only that a defendant must show that he was 'unavoidably prevented from the discovery of the evidence upon which he must rely.' " *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 53. Specifically, Crim.R. 33(B) states in part:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

In *Bethel,* the Supreme Court of Ohio criticized the judicially created requirement "that a convicted defendant must file a motion for leave within a reasonable period of time after discovering the new evidence, to prevent defendants from deliberately delaying filing the motion 'in the hope that witnesses would be unavailable or no longer remember the events clearly, if at all, or that evidence might disappear.' " *Bethel* at ¶ 53, quoting *State v. Stansberry*, 8th Dist. Cuyahoga No. 71004, 1997 WL 626063, *3 (Oct. 9, 1997).  The Court held that the Rules of Criminal Procedure do not permit trial courts to impose an additional "reasonable time" requirement on criminal defendants that would require a motion for leave to file a motion for new trial to be made within a reasonable time after

discovering the new evidence. *Bethel* at ¶ 54-57. As a result, Jewett must only show what Crim.R. 33(B) requires of him: clear and convincing proof that he was unable to discover the evidence upon which he relies for his motion for a new trial. The timeliness of his motion for leave to file a motion for new trial is not a consideration.

**{¶14}** The Court in *Bethel* also held, "The 'unavoidably prevented' requirement in Crim.R. 33(B) mirrors the 'unavoidably prevented' requirement in R.C. 2953.23(A)(1)." *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 59, citing *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28. "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Barnes,* 5th Dist. Muskingum No. CT2022-0001, 2022-Ohio-4613, ¶ 39. No hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay. *Id.* at ¶ 51.

**{¶15}** Here Jewett argued that because the verdicts in his trial were announced on September 8, 2015, any evidence outside of January 6, 2016 could only be presented via a motion for leave pursuant to Crim.R. 33(B). He contends, "The attached February 1, 2019 probate application; May 15, 2019, June 13, 2019, and September 5, 2019 Cincinnati Enquirer articles demonstrate being unavoidably prevented. Defendant could not have reasonably supported a Crim.R. 33(A)(1)[2] ground until these ethical concerns were made public."

---

[2] Jewett appears to incorrectly reference Crim.R. 33(A)(1), which allows for a new trial for, "Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." It is Crim.R. 33(A)(6) that allows for a new trial, "When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."

**{¶16}** We have already considered and rejected Jewett's argument that he was unavoidably prevented from discovering Judge Marshall's alcohol problem when we reviewed his appeal of the denial of his postconviction petition. *State v. Jewett*, 4th Dist. Scioto No. 22CA3976, 2022-Ohio-261, ¶ 15-20. We reject Jewett's contention that he could not have possibly known about ethical concerns related to Judge Marshall's alcoholism until they were reported in newspaper articles in 2019. The 2019 newspaper articles reference Judge Marshall's alcohol problems and state that these problems were publicly known as far back as 2013.

**{¶17}** The 2019 newspaper articles attached to Jewett's petition also indicate that the Supreme Court of Ohio issued a decision in the disciplinary case in which it *publicly reprimanded* Judge Marshall and mentioned him suffering from alcoholism and making efforts to address it. *Disciplinary Counsel v. Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110, at ¶ 6, 8. This April 1, 2015 decision was issued to the public two weeks before the grand jury's April 16, 2015 indictment against Jewett.

**{¶18}** Jewett's suggestion that the public did not have access to this decision or court records in the 2013 OVI case or related disciplinary case prior to the deadline for him to file a motion for new trial is not well-taken. As we explained previously:

> The Supreme Court of Ohio's Rules for the Reporting of Opinions mandate that "[a]ll opinions of the Supreme Court shall be promptly posted to the Supreme Court website and reported in the advance sheets and bound volumes of the *Ohio Official Reports*." Rep.Op.R. 2.1. In addition, S.Ct.Prac.R. 3.02(A)(1)(b) states that "[d]ocuments filed with the Supreme Court shall be available for public access pursuant to Sup.R. 44 through 47." Under Sup.R. 45(A), "[c]ourt records are presumed open to public access." Although Sup.R. 45(E) authorizes a court to restrict public access in certain circumstances, nothing in Jewett's petition or attachments indicates public access to the court records in the 2013 OVI case or related disciplinary case was restricted prior to the deadline for him to file his petition. The June 13, 2019 Cincinnati Enquirer article suggests public

access to the complete probate court records in the 2019 guardianship case was restricted until the Enquirer threatened legal action, but the article gives no indication of any restrictions on public access to any other court records in legal proceedings against Judge Marshall. Moreover, Jewett offers no explanation as to how his incarceration prevented him from discovering the publicly available information about Judge Marshall's alcohol problem prior to the deadline for filing a postconviction relief petition.

*Jewett* at ¶ 19.

**{¶19}** Similarly here, Jewett offers no explanation as to how his incarceration unavoidably prevented him from discovering publicly available information about Judge Marshall's alcohol problem prior to the deadline for filing a motion for new trial. Crim.R. 33(B) does not require the trial court to hold a hearing before ruling on a motion for leave to file a motion for new trial, particularly here where Jewett failed to establish prima facie evidence that he was unavoidably prevented from discovering the evidence. *Barnes* at ¶ 51. In fact, Crim.R. 33(B) does not even require a hearing on a motion for new trial unless the motion alleges "sufficient substantive grounds for relief to warrant a hearing." *State v. Hatton*, __Ohio St.3d __, 2022-Ohio-3991, __ N.E.3d__, ¶ 35. We find that the trial court did not abuse its discretion when it denied Jewett's motion for leave to file a motion for a new trial without holding an evidentiary hearing.

**{¶20}** We affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
                     Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**