[Cite as *State v. Barnes*, 2018-Ohio-1585.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DANIEL L. BARNES III | : | Case No. CT2017-0092 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2013-0199

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    April 20, 2018

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney

By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43702-0189

For Defendant-Appellant

DANIEL BARNES, III, pro se
#A688-102
Ross Correctional Institutution
P.O. Box 7010
Chillicothe, Ohio 45602

*Baldwin, J.*

**{¶1}**   Appellant, Daniel Barnes, III, appeals the denial of his motion for leave to file a motion for a new trial, as well as his motion for a new trial, journalized by the Muskingum County Court of Common Pleas on November 1, 2017. Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

**{¶2}**   On July 8, 2013, James Martin visited the Cozy Corner Bar with his friend, James Ricket, also known as "Hub." While at the bar, Martin saw appellant, Daniel Barnes III, and Eric Thornton, also known as "Louie" and "Fats" respectively. Appellant and Thornton asked Martin for a ride from the bar.

**{¶3}**   Upon arriving at a neighborhood in Zanesville, Martin testified appellant asked him to drive around the city block one time. Martin stated he drove around the block and returned to the same spot. Upon parking, Martin felt his seat belt tighten and something, he believed to be a gun, at the back of his head. He testified he then saw appellant leaning up with his arm and putting a gun to the back of Ricket's head, telling him to "just chill." He noted the gun was black, and had a beam on it.

**{¶4}**   Martin testified he threw his hands in the air, and told appellant and Thornton they could have everything. He stated he emptied his pockets on the armrest in the middle of the car. Appellant and Thornton took everything, including cash. Appellant told Martin to pop the trunk of the car and to get inside of the trunk. Martin testified he observed the trunk of the car had an emergency release, and after being ordered into the trunk at gun point, he waited until the car turned into the alley and then activated the emergency release.

{¶5} Martin escaped and took off running along Cliffwood Avenue. He ran onto a porch, banging on the door. Appellant caught up with him, and pointed the gun at Martin. A struggle ensued over the gun. Appellant engaged in a fight with Martin, inserting his fingers into Martin's eyeball socket and biting Martin.

{¶6} Appellant testified at trial on his own behalf. He maintains Martin drove to a neighborhood in Zanesville to drop off crack [cocaine] he sells. Appellant testified Martin went into the house and appellant waited outside smoking a cigarette with the car door kicked open. When Martin returned to the car, all three occupants were laughing. Appellant told Martin they were laughing at him and he became angry and argued with appellant. Appellant's car door was wedged on a tree stump and when Martin put the car in reverse, the door was damaged. Martin then got out of the car, upset about the door. Ricket and Thornton also exited the vehicle during the incident. Ricket stepped on the side panel and leaned onto the hood of the car, watching appellant and Martin.

{¶7} Appellant maintains a fight ensued, during which Martin's glasses were knocked off into the street. The fight lead to a chase ending on the front porch of Roberta Jones' residence. Appellant maintains he told Jones to call the police, using her name, as he was familiar with her from the past.

{¶8} Both appellant and Martin testified a shot was fired on the porch of Roberta Jones. Appellant then hit Martin with the gun several times. Martin then ran from the porch to the police cruiser of Patrolman Chris Andrews. Patrolman Andrews testified at trial as to the incident, and the relation of the events as told to him by Martin in his cruiser.

{¶9} Patrolman Groves of the Zanesville Police Department testified he was responding to a request for assistance to apprehend a suspect with a handgun on June

10, 2013. He and his K–9 officer responded, and tracked the subject. His K–9 alerted to something dropped by the subject, which turned out to be a Glock 23 handgun with a laser. The firearm was later tested and introduced into evidence as the firearm involved in the confrontation between appellant and Martin.

{¶10} Appellant was indicted on two counts of kidnapping, in violation of R.C. 2905.01(A)(2) and R.C. 2905.01(A)(3), felonies of the third degree, with  attendant gun specifications, in violation of R.C. 2941.145; one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with an attendant gun specification, in violation of R.C. 2941.145; one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree, with a gun specification under R.C. 2941.145; and one count of having a weapon under disability, in violation of R.C. 2929.13(A)(3), a felony of the third degree.

{¶11} Following a jury trial, appellant was found guilty of the aggravated robbery charge, with a gun specification; felonious assault, with a gun specification; and having weapons under disability. Appellant was found not guilty of the kidnapping charges.

{¶12} A sentencing hearing was held on February 17, 2015. Appellant was sentenced to eleven years on the aggravated robbery charge, eight years on the felonious assault charge, thirty-six months on the having weapons under disability charge, and two, three-year mandatory sentences on the gun specifications.

{¶13} Appellant appealed his conviction and this court overruled four of the five assignments of error, sustained the fifth assignment, vacated the sentence, and remanded the matter for resentencing. *State v. Barnes*, 5th Dist. Muskingum No. CT2015-0013, 2016-Ohio-1168, *appeal not allowed,* 146 Ohio St.3d 1430, 2016-Ohio-4606, 52

N.E.3d 1205 (2016). Appellant filed a second appeal after resentencing complaining the trial court "plainly erred in imposing maximum consecutive sentences for appellant's separate convictions rendering the sentences contrary to law and the state and federal constitutions." We affirmed the trial court's sentence on December 12, 2016. *State v. Barnes*, 5th Dist. Muskingum No. CT2016-0024, 2016-Ohio-8247, ¶ 6, *appeal not allowed,* 149 Ohio St.3d 1421, 2017-Ohio-4038, 75 N.E.3d 237 (2017), and *appeal not allowed,* 151 Ohio St.3d 1477, 2017-Ohio-9111, 87 N.E.3d 1273 (2017).

**{¶14}** Appellant filed a motion to re-open his appeal pursuant to App.R. 26(B) and that motion was denied on August 28, 2017. *Barnes*, 2016 -Ohio- 8247.

**{¶15}** On April 14, 2016 appellant filed a motion for a new trial and submitted a document described as a "deposition" of James Rickett recanting his trial testimony. On November 6, 2016 appellant filed a motion for leave to file a motion for a new trial instanter nunc pro tunc and submitted an affidavit of a "newly discovered witness" Kayla Dickinson and the affidavit of Jasmine Barnes. He then filed a motion for leave to supplement his motion for leave to file a motion for new trial on March 15, 2017 and attached two unsworn statements.

**{¶16}** Mr. Ricket's deposition testimony is at times ambiguous and confusing, but it suggests that his contention is that no robbery occurred on June 8, 2013. Instead, a fight occurred between appellant and Martin which co-defendant Eric Thornton tried to break up. Ricket contends he attempted to tell detectives the truth, but they "threatened" him with jail, suggested he was either a "victim" or a "suspect" leaving him no choice but to corroborate Martin's testimony. Appellant purportedly became aware of Ricket's deposition in January 2016, when, according to Jasmine Barnes' affidavit, she received

an unsolicited call from Mr. Ricket indicating that he wanted to recant his testimony from June 8, 2013. We are left to speculate how Mr. Ricket had the resources and ability to contact Ms. Barnes or if appellant had made any attempt to contact Mr. Ricket prior to January 2016. The delay between the initial contact by Mr. Ricket in January 2016 and the filing of the first motion on April 14, 2016 also remains unexplained.

**{¶17}** Appellant also submitted Kayla Dickinson's affidavit, sworn and signed on April 13, 2016. She asserts that on June 8, 2013 she lived on Cliffwood and was outside on her porch smoking a cigarette when she saw four men get out of a car. She recognized two of the men as Martin and appellant because she "knew both of them well." She heard escalating verbal argument and observed "they" were scuffling; the fighting escalated and "they" moved down Cliffwood. The affidavit states, "This looked like two grown men fighting. I then heard [appellant] say "oh my god this nigger [sic] has a gun." She went back inside, convinced this was merely "a stupid mutual fight" between two grown men. "Later" she saw "they" claimed it was a robbery but she thought it was "no big deal" until she learned appellant received a lengthy prison sentence, leading her to "reach out to [appellant's] family on Facebook" and let them know it was a mutual fight.

**{¶18}** Jasmine Barnes affidavit, submitted by appellant provides a different description of discovering Ms. Dickinson's testimony. Ms. Barnes states that she met Ms. Dickinson on February 22, 2106, coincidentally, at a laundromat and that Ms. Dickinson disclosed this information during an informal conversation.

**{¶19}** Appellee responded to appellant's motion on May 3, 2016 and appellant replied on May 16, 2016. By judgment entry dated November 1, 2017, the trial court overruled appellant's motions and concluded "***the Court finds the Defendant has failed

to provide newly discovered evidence or substantive grounds for a new trial." Appellant now appeals from the trial court's judgment and raises two assignments of error:

{¶20} I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR LEAVE FOR A NEW TRIAL AND MOTION NEW TRIAL (SIC) AS NOT BEING BASED ON NEWLY DISCOVERED EVIDENCE.

{¶21} II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR LEAVE FOR NEW TRIAL AND MOTION FOR NEW TRIAL WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING.

{¶22} Appellant's two assignments of error are related and will be considered together. Appellant argues the trial court should have granted leave to file a motion for new trial, conducted a hearing on the motion and should have granted his motion for a new trial based upon the "new" evidence cited above.

{¶23} We addressed a similar motion based upon similar "new evidence" in the case of appellant's co-defendant, Eric Thorton in our opinion in *State v. Thornton*, 5th Dist. Muskingum No. CT2016-0041, 2017-Ohio-637, *appeal not allowed,* 149 Ohio St.3d 1465, 2017-Ohio-5699, 77 N.E.3d 989 (2017). We have reviewed the record in this case and we conclude that our analysis requires the same results.

### STANDARD OF REVIEW

{¶24} A motion for a new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). It is also within the discretion of the trial court to determine whether a motion for a new trial and the material submitted with the motion warrants an evidentiary hearing. *State v. Hill*, 64 Ohio St.3d 313, 333, 1992-Ohio-43, 595 N.E.2d 884 (1992). To constitute an abuse

of discretion, a trial court's decision must be unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶25} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed:

> * * within one hundred twenty days after the day upon which the verdict was rendered. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶26} The verdict in appellant's case was rendered on January 13, 2015 but appellant's motion was not filed until April 14, 2016. "Because appellant's motion was filed well outside the 120–day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, 68 N.E.3d 381, *appeal not allowed,* 149 Ohio St.3d 1462, 2017-Ohio-5699, 77 N.E.3d 987 (2017), and *cert. denied,* U.S. No. 17-71452018 WL 1037605, citing *State v. Hoover-Moore,* 10th Dist. Franklin No. 2015-Ohio-4863, 14AP–104, ¶13. "To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days." *Id.* A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id.*, citing

*State v. Walden,* 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859 (10th Dist.1984).

**{¶27}** Appellant's proof must be more than conclusory allegations. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " *State v. Lee,* 10th Dist. Franklin No. 05AP–229, 2005–Ohio–6374, 2005 WL 3220245, ¶ 9. The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez—Baron,* 7th Dist. Mahoning No. 12–MA–44, 2012–Ohio–5360, 2012 WL 5863613, ¶ 11. Clear and convincing proof is that "which will produce in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." *Schniebel,* 55 Ohio St.3d at 74.

**{¶28}** "[I]n order to obtain relief pursuant to Crim.R. 33(B) a movant/petitioner must satisfy the threshold requirement of unavoidable prevention." *State v. Waddy*, supra, at ¶ 27. The "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1). "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *Id.* at ¶ 28, citing *State v. Howard*, 10th Dist. Franklin No. 15AP-161, 2016-Ohio-504, *appeal not allowed,* 147 Ohio St.3d 1413, 2016-Ohio-7455, 62 N.E.3d 185. Internal citation omitted. Here, there is no indication that appellant made any effort to obtain the evidence on which he now relies within the time limitations applicable to motions for a new trial. *State v. Leyman*, 9th Dist. Medina No. 14CA0037–M, 2016–Ohio–59, ¶ 14, appeal not allowed, 145 Ohio St.3d

1471, 2016–Ohio–3028, 49 N.E.3d 1314.

**{¶29}** Thus, the central inquiry in appellant's motion for a new trial is whether the purported evidence offered by Ricket and Dickinson disclose newly-discovered evidence appellant was unavoidably prevented from obtaining. The "phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *State v. Williams,* 12th Dist. Butler No. CA2003–01–001, 2003–Ohio–5873, ¶ 21. Appellant complains that incarceration suffices to fulfill the "unavoidably prevented" requirement, but we have held that "*** the fact of his incarceration, by itself, does not equate to clear and convincing proof that he was unavoidably prevented from discovering the evidence within the Crim.R. 33(B) time parameters." *State v. Smith*, 2nd Dist. Miami App. No. 97 CA 46, 1998 WL 404458 (March 27, 1998),  as cited in *State v. Raver*, 5th Dist. Fairfield No. 00CA13, 2000 WL 1476134, *2.  Appellant's ability to file appeals as well as a motion to re-open one appeal, the motions for a new trial and this pro se appeal belie his complaint that incarceration hampered his ability to access the legal system to guard his interests.

**{¶30}** The trial court's ruling in this case does not include an explicit finding that appellant failed to demonstrate he was unavoidably prevented from discovering the evidence. Although Crim.R. 33(B) does indicate that the court must issue "an order * * * finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period," there is no requirement, direct or implied, that a trial court explicitly find in its judgment that a defendant was not unavoidably prevented from discovering evidence. *State v. Mosley*, 10th Dist. Franklin No. 07AP–860, 2008–Ohio–951, ¶ 8, appeal not allowed, 118 Ohio St.3d 1509, 2008–Ohio–3369, 889 N.E.2d 1026.

"Although the better practice would be for a trial court to give some explanation of the basis for its decision in order to aid appellate review, given the trial court's general denial of appellant's motion for a delayed motion for new trial here, we must presume that the court found appellant had failed to demonstrate that he was unavoidably prevented from discovering the evidence relied upon in his motion." Id.

**{¶31}** Appellant has not offered any explanation that comprises clear and convincing proof that he could not have learned of the existence of Ricket's recantation or Dickinson's statement within the time prescribed in the exercise of reasonable diligence.

**{¶32}** Regarding Ricket's affidavit and deposition testimony, appellant did not provide any evidence as to his efforts to locate Ricket.  Ricket discloses in his affidavit that he had been prepared to recant his testimony since before he was wounded in 2013, even before appellant's trial. Appellant has not submitted his own affidavit offering any explanation for the delay. "[I]t has been squarely held that 'the use of an affidavit signed outside of the time limit [under Crim.R. 33(B)] that fails to offer any reason why it could not have been obtained sooner is not adequate to show by clear and convincing proof that the evidence could not have been obtained within the prescribed time period.'" *State v. Peals*, 6th Dist. Lucas No. L–10–1035, 2010–Ohio–5893, ¶ 25, quoting *State v. Franklin*, 7th Dist. Mahoning No. 09 MA 96, 2010–Ohio–4317, ¶ 20; *State v. Sandoval*, 6th Dist. Sandusky No. S-13-032, 2014-Ohio-4972, ¶ 16. Thus, the affidavits on their face do not support unavoidable delay. *State v. Thompson,* 6th Dist. Lucas No. L-15-1006, 2016-Ohio-1399, ¶ 20, appeal not allowed, 146 Ohio St.3d 1491, 2016-Ohio-5585, 57 N.E.3d 1171, ¶ 20.

**{¶33}** The "deposition" transcript alone, without an affidavit from Ricket or appellant explaining the underlying circumstances of the recantation, does not establish a sufficient basis for us to find the trial court abused its discretion in overruling the motion without a hearing. Jasmine Barnes' affidavit, offered over 200 days after the first motion for new trial, offers no evidence that appellant made any diligent effort to obtain Mr. Ricket's affidavit.

**{¶34}** Dickinson's affidavit includes no evidence to establish that appellant was "unavoidably prevented" from discovering her statement within the time for filing a motion for new trial. The key issue is whether appellant knew or could have discovered through reasonable diligence within the time period provided under Crim.R. 33(B) that Dickinson had potentially relevant information. Dickinson's affidavit states she knew both appellant and Martin "well," and offers only a cursory explanation that she "heard" appellant was convicted of serious charges, thus she "reached out on Facebook" to appellant's relatives. If someone appellant knew well lived so close to the site of the alleged mutual fight, it remains unexplained why defense investigators on behalf of appellant would not have sought out such a witness prior to trial. Appellant bears the burden of establishing, by clear and convincing evidence, that he was unavoidably prevented from discovering this evidence earlier. He has not shown, through the affidavits submitted, that Dickinson was unknown or "placed beyond the range of a reasonable investigation by the defense, much less beyond the Subpoena power." See, *Veliev v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12–CV–00346, 2014 WL 4805292, *10, (Sept. 26, 2104)

**{¶35}** We are unconvinced Dickinson could not have been identified as a potential defense witness prior to trial. The reasonable diligence requirement of Crim.R. 33(A)(6)

infers that an attorney will use reasonable efforts and reasonable foresight to procure evidence. *State v. Shepard,* 13 Ohio App.3d 117, 118, 468 N.E.2d 380 (2nd Dist.1983), citing *State v. Kiraly,* 56 Ohio App.2d 37, 51–54, 381 N.E.2d 649 (8th Dist.1977). An attorney must use reasonable diligence to secure newly discovered evidence within a reasonable time after the trial. *Id.*

**{¶36}** No hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay. *State v. Baldwin*, 5th Dist. Stark No. 2013CA00134, 2014–Ohio–290, ¶ 24, citing *State v. Peals,* supra, at ¶ 23; *State v. Clumm,* 4th Dist. Athens No. 08CA32, 2010–Ohio–342, ¶ 28; *State v. Bush,* 10th Dist. Franklin No. 08AP–627, 2009–Ohio–441, ¶ 12; *State v. Parker,* 178 Ohio App.3d 574, 2008–Ohio–5178, ¶ 21 (2nd Dist.); *State v. Norman,* 10th Dist. Franklin No. 04AP–1312, 2005–Ohio–5087, ¶ 9. Affidavits filed outside of the 120–day time limit of Crim. R. 33 that fail to offer a sufficient explanation as to why evidence could not have been obtained sooner are inadequate to show that the movant was unavoidably prevented from obtaining the evidence within the prescribed time. *Ambartsoumov v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12–CV–345, 2014 WL 4805384, *7, internal citations omitted.

**{¶37}** We find appellant failed to demonstrate why he could not have learned of Dickinson's purported knowledge of the crimes with reasonable diligence.

**{¶38}** Appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering, within the prescribed time period, the evidence he is relying on to support his motion and petition. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a delayed motion for

new trial. We further find that the trial court did not abuse its discretion in denying the motions without a hearing because the evidence, on its face, did not support appellant's claims that he was unavoidably prevented from timely discovery of the evidence. *State v. Davis,* 9th Dist. Lorain No. 12CA010256, 2013–Ohio–846, ¶ 12, internal citation omitted.

## CONCLUSION

{¶39} Appellant's two assignments of error are overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellant.

By: Baldwin, J.

Gwin, P.J. and

Earle Wise, J. concur.