[Cite as *State v. Barnes*, 2022-Ohio-4613.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. CT2022-0001 |
| | : | |
| DANIEL BARNES | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Muskingum County
                                    Court of Common Pleas, Case No.
                                    CR2013-0199



JUDGMENT:                           AFFIRMED



DATE OF JUDGMENT ENTRY:             December 19, 2022



APPEARANCES:


For Plaintiff-Appellee:                   For Defendant-Appellant:

RONALD L. WELCH                           ERIC J. ALLEN
MUSKINGUM CO. PROSECUTOR                  4200 Regent St., Suite 200
TAYLOR BENNINGTON                         Columbus, OH 43219
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702-0189

*Delaney, J.*

{¶1} Appellant Daniel Barnes appeals from the December 27, 2021, Journal Entry of the Muskingum County Court of Common Pleas overruling his motion for a new trial. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

*Original conviction and direct appeal*

{¶2} The following facts are taken from our opinion at *State v. Barnes*, 5th Dist. Muskingum No. CT2015-0013, 2016-Ohio-1168, ¶ 2-12, *appeal not allowed*, 146 Ohio St.3d 1430, 2016–Ohio–4606, 52 N.E.3d 1205 (2016) [*Barnes I*].

{¶3} On July 8, 2013, James Martin visited the Cozy Corner Bar with his friend, James Rickett, also known as "Hub." While at the bar, Martin saw appellant, Daniel Barnes III, and Eric Thornton, also known as "Louie" and "Fats" respectively. Appellant and Thornton asked Martin for a ride from the bar.

{¶4} Upon arriving at a neighborhood in Zanesville, Martin testified appellant asked him to drive around the city block one time. Martin stated he drove around the block and returned to the same spot. Upon parking, Martin felt his seat belt tighten and something, he believed to be a gun, at the back of his head. He testified he then saw appellant leaning up with his arm and putting a gun to the back of Rickett's head, telling him to "just chill." He noted the gun was black and had a beam on it.

{¶5} Martin testified he threw his hands in the air and told appellant and Thornton they could have everything. He stated he emptied his pockets on the armrest in the middle of the car. Appellant and Thornton took everything, including cash monies. Appellant told Martin to pop the trunk of the car and to get inside of the trunk. Martin testified he observed

the trunk of the car had an emergency release, and after being ordered into the trunk at gun point, he waited until the car turned into the alley and then activated the emergency release.

{¶6} Martin escaped and took off running along Cliffwood Avenue. He ran onto a porch, banging on the door. Appellant caught up with him and pointed the gun at Martin. A struggle ensued over the gun. Appellant engaged in a fight with Martin, inserting his fingers into Martin's eyeball socket and biting Martin.

{¶7} Appellant testified at trial on his own behalf. He maintains Martin drove to a neighborhood in Zanesville to pick up crack cocaine he intended to sell. Appellant testified Martin went into a crack house to purchase the crack. Appellant waited outside smoking a cigarette with the car door kicked open when Martin returned. As Martin got back inside the car, he was angry, and the car door jammed causing damage. Martin then got out of the car, cussing about the door and became upset. Rickett and Thornton also exited the vehicle during the incident. Rickett stepped on the side panel and onto the hood of the car, observing and watching.

{¶8} Appellant maintains a fight ensued, during which Martin's glasses were knocked off into the street. The fight led to a chase ending on the front porch of Roberta Jones' residence. Appellant maintains he told Jones to call the police, using her name, as he was familiar with her from the past.

{¶9} Both appellant and Martin testified a shot was fired on the porch of Roberta Jones. Appellant then hit Martin with the gun several times. Martin then ran from the porch to the police cruiser of Patrolman Chris Andrews. Patrolman Andrews testified at trial as to the incident, and the relation of the events as told to him by Martin in his cruiser.

{¶10} Patrolman Groves of the Zanesville Police Department testified he was responding to an assault with a handgun when he observed a subject run between two houses. He and his K–9 officer responded and chased the subject. His K–9 alerted to something dropped by the subject, which turned out to be a Glock 23 handgun with a laser. The firearm was later tested and introduced into evidence as the firearm involved in the incident.

{¶11} As a result of the incident, appellant was indicted on two counts of kidnapping, in violation of R.C. 2905.01(A)(2) and R.C. 2905.01(A)(3), felonies of the third degree; one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with an attendant gun specification, in violation of R.C. 2941.145; one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree, with a gun specification under R.C. 2941.145; and one count of having a weapon under disability, in violation of R.C. 2929.13(A)(3), a felony of the third degree.

{¶12} Following a jury trial, appellant was found guilty of the aggravated robbery charge, with a gun specification; felonious assault, with a gun specification; and having weapons under disability. Appellant was found not guilty of the kidnapping charges.

{¶13} A sentencing hearing was held on February 17, 2015. Appellant was sentenced to eleven years on the aggravated robbery charge, eight years on the felonious assault charge, thirty-six months on the having weapons under disability charge, and two three-year mandatory sentences on the gun specifications. The sentences were run consecutively for an aggregate twenty-eight year prison term.

{¶14} Appellant filed a direct appeal of his convictions and sentences in *Barnes I,* asserting, e.g., that his convictions were against the manifest weight of the evidence. We

overruled four of appellant's assignments of error but sustained the fifth, finding the trial court did not make all the requisite findings necessary to support the imposition of consecutive sentences either during sentencing or in its sentencing entry. Appellant's sentence was vacated, and the matter remanded for resentencing. *Barnes I*, supra, 2016-Ohio-1168, ¶ 78.

*Resentencing and appeal*

{¶15} By judgment entry filed April 27, 2016, the trial court resentenced appellant to the same sentence.

{¶16} Appellant filed an appeal of the resentencing, arguing the trial court erred in imposing maximum consecutive sentences because the sentences are contrary to the purposes expressed by the Ohio General Assembly. Specifically, appellant claims a maximum consecutive sentence fails to reduce the state's prison population, fails to save on costs associated with incarceration by diverting certain offenders from prison, and fails to shorten the terms of other offenders sentenced to prison. We disagreed and overruled appellant's single assignment of error. *State v. Barnes*, 5th Dist. Muskingum No. CT2016-0024, 2016-Ohio-8247, ¶ 12, *appeal not allowed*, 149 Ohio St.3d 1421, 2017–Ohio–4038, 75 N.E.3d 237 (2017), and *appeal not allowed*, 151 Ohio St.3d 1477, 2017–Ohio–9111, 87 N.E.3d 1273 (2017) [*Barnes II*].

{¶17} Appellant filed a motion to re-open his appeal pursuant to App.R. 26(B) and that motion was denied on August 28, 2017. *Barnes II*, 2016–Ohio–8247.

*First motion for new trial: Rickett recants*

{¶18} The following statement of fact and case history are taken from our opinion at *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 13-21, appeal not allowed, 153 Ohio St.3d 1462, 2018-Ohio-3258, 104 N.E.3d 792 [*Barnes III*].

{¶19} On April 14, 2016, appellant filed a motion for a new trial and submitted a document described as a "deposition" of James Rickett recanting his trial testimony. On November 6, 2016, appellant filed a motion for leave to file a motion for a new trial instanter nunc pro tunc and submitted an affidavit of a "newly discovered witness" Kayla Dickinson and the affidavit of Jasmine Barnes. He then filed a motion for leave to supplement his motion for leave to file a motion for new trial on March 15, 2017 and attached two unsworn statements.

{¶20} Mr. Rickett's deposition testimony is at times ambiguous and confusing, but it suggests that his contention is that no robbery occurred on June 8, 2013. Instead, a fight occurred between appellant and Martin which co-defendant Eric Thornton tried to break up. Rickett contends he attempted to tell detectives the truth, but they "threatened" him with jail, suggested he was either a "victim" or a "suspect" leaving him no choice but to corroborate Martin's testimony. Appellant purportedly became aware of Rickett's deposition in January 2016, when, according to Jasmine Barnes' affidavit, she received an unsolicited call from Mr. Rickett indicating that he wanted to recant his testimony from June 8, 2013. We are left to speculate how Mr. Rickett had the resources and ability to contact Ms. Barnes or if appellant had made any attempt to contact Mr. Rickett prior to January 2016. The delay between the initial contact by Mr. Rickett in January 2016 and the filing of the first motion on April 14, 2016, also remains unexplained.

{¶21} Appellant also submitted Kayla Dickinson's affidavit, sworn and signed on April 13, 2016. She asserts that on June 8, 2013, she lived on Cliffwood and was outside on her porch smoking a cigarette when she saw four men get out of a car. She recognized two of the men as Martin and appellant because she "knew both of them well." She heard escalating verbal argument and observed "they" were scuffling; the fighting escalated, and "they" moved down Cliffwood. The affidavit states, "This looked like two grown men fighting. I then heard [appellant] say "oh my god this nigger [sic] has a gun." She went back inside, convinced this was merely "a stupid mutual fight" between two grown men. "Later" she saw "they" claimed it was a robbery, but she thought it was "no big deal" until she learned appellant received a lengthy prison sentence, leading her to "reach out to [appellant's] family on Facebook" and let them know it was a mutual fight.

{¶22} Jasmine Barnes' affidavit provides a different description of discovering Ms. Dickinson's testimony. Ms. Barnes states that she met Ms. Dickinson on February 22, 2106, coincidentally, at a laundromat and that Ms. Dickinson disclosed this information during an informal conversation.

{¶23} Appellee responded to appellant's motion on May 3, 2016, and appellant replied on May 16, 2016. By judgment entry dated November 1, 2017, the trial court overruled appellant's motions and concluded "* * * the Court finds the Defendant has failed to provide newly discovered evidence or substantive grounds for a new trial."

{¶24} Appellant appealed from the trial court's judgment, but we found he failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering, within the prescribed time period, the evidence he relied on to support his motion and petition, therefore the trial court did not abuse its discretion in denying

appellant's motion for leave to file a delayed motion for new trial. We further found that the trial court did not abuse its discretion in denying the motions without a hearing because the evidence, on its face, did not support appellant's claims that he was unavoidably prevented from timely discovery of the evidence. *Barnes III*, supra, ¶ 38.

*Second motion for new trial and the instant appeal: Martin "recants"*

{¶25} On November 15, 2021, appellant filed a "Motion for an Order Granting Leave to File a Motion for New Trial." This motion is accompanied by an affidavit and deposition transcript of the purported victim, James Martin, and a previously unknown witness, Ericka Walker.

{¶26} Martin now claimed Thornton put the gun to his head, ordered him out of the vehicle, and directed him to get into the trunk. Thornton started to drive off, but he argued with appellant and Rickett. Martin jumped out of the trunk and ran off. "A short time later, [Martin] observed [appellant] outside of the vehicle running in his direction. [Martin] was unaware if [appellant] was running with him or after him." Martin's affidavit further states that appellant caught up to him and they began to fight; a gun fell on the ground, they both went after it, and it accidentally discharged. Although Martin's glasses, watch, and earring came off during the altercation, it is not true that appellant robbed him of those items. Police and prosecutors "insisted" that he claim appellant robbed him, but he was "upset" and "unclear of everything that happened that night." Portions of the police report are exaggerated because Martin felt pressured by police. Now, though, he feels pressured by the weight of his lies and wants to tell the truth.

{¶27} Walker's affidavit states she knows both Martin and appellant.[1] She was on her front porch smoking a cigarette on the evening of July 8-9, 2013, between 12:30-1:30. She heard appellant and Martin arguing and saw Martin "throw a fist" at appellant. The fight escalated, but Walker went inside and then heard a single shot. She moved shortly after the incident and never spoke to police or prosecutors.

{¶28} Appellee responded with a memorandum contra on December 8, 2021.

{¶29} On December 27, 2021, the trial court denied appellant's motion for an order granting leave to file a motion for new trial.

{¶30} Appellant now appeals from the trial court's judgment entry of December 27, 2021.

{¶31} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶32} "I. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL."

{¶33} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT HOLDING AN EVIDENTIARY HEARING IN THIS MATTER."

**ANALYSIS**

{¶34} Appellant's two assignments of error are related and will be considered together. He contends the trial court should have granted his motion for leave to file a motion for new trial and should have held an evidentiary hearing. We disagree.

---

[1] On appeal, appellant omits mention of Walker's affidavit, but it was part of the motion before the trial court. We note its similarity to Kayla Dickinson's affidavit.

{¶35} Appellant's latest arguments are strikingly similar to those in *Barnes III*. A motion for a new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). It is also within the discretion of the trial court to determine whether a motion for a new trial and the material submitted with the motion warrant an evidentiary hearing. *State v. Hill*, 64 Ohio St.3d 313, 333, 1992–Ohio–43, 595 N.E.2d 884 (1992). To constitute an abuse of discretion, a trial court's decision must be unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶36} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed:

> * * * within one hundred twenty days after the day upon which the verdict was rendered. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶37} The verdict in appellant's case was rendered on January 13, 2015, but appellant's second motion for new trial was not filed until November 15, 2021. "Because appellant's motion was filed well outside the 120–day period, he was required to obtain leave of court to file his motion for new trial." *State v. Waddy*, 10th Dist. No. 15AP–397, 2016–Ohio–4911, 68 N.E.3d 381, *appeal not allowed*, 149 Ohio St.3d 1462, 2017–Ohio–5699, 77 N.E.3d 987 (2017), and *cert. denied*, U.S. No. 17–71452018 WL 1037605,

citing *State v. Hoover–Moore*, 10th Dist. Franklin No. 2015–Ohio–4863, 14AP–104, ¶ 13. "To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days." *Id.* A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *Id.*, citing *State v. Walden*, 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859 (10th Dist.1984).

{¶38} Appellant's proof must be more than conclusory allegations. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *State v. Lee*, 10th Dist. Franklin No. 05AP–229, 2005–Ohio–6374, 2005 WL 3220245, ¶ 9. The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Rodriguez—Baron*, 7th Dist. Mahoning No. 12–MA–44, 2012–Ohio–5360, ¶ 11. Clear and convincing proof is that "which will produce in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." *Schniebel*, 55 Ohio St.3d at 74.

{¶39} "[I]n order to obtain relief pursuant to Crim.R. 33(B) a movant/petitioner must satisfy the threshold requirement of unavoidable prevention." *State v. Waddy*, supra, at ¶ 27. The "unavoidably-prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1). "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts

and was unable to learn of them through reasonable diligence." *Id.* at ¶ 28, citing *State v. Howard*, 10th Dist. Franklin No. 15AP–161, 2016–Ohio–504, *appeal not allowed*, 147 Ohio St.3d 1413, 2016–Ohio–7455, 62 N.E.3d 185, internal citation omitted.

{¶40} In the instant case, there is no indication that appellant made any effort to obtain the evidence on which he now relies within the time limitations applicable to motions for a new trial. *State v. Leyman*, 9th Dist. Medina No. 14CA0037–M, 2016–Ohio–59, ¶ 14, appeal not allowed, 145 Ohio St.3d 1471, 2016–Ohio–3028, 49 N.E.3d 1314.

{¶41} However, appellant now contends the "unavoidably-prevented" factor should not apply to him because Martin's recantation was "*Brady* material" appellee should have disclosed to defense counsel; specifically, appellee and law enforcement "coerced a witness into lying on the stand." Brief, 9. Appellant cites broadly to the "deposition of James Martin" to support his claims, without directing us to any specific portion of the deposition in which Martin claims he was coerced into lying.

{¶42} We note Martin's affidavit does not state appellee told him to lie; instead, he claims he was "upset and unclear" when he made the allegations in the first place, then "he felt he could not tell the truth" because police and prosecutors "were insistent on him telling the story that [appellant] had robbed him." Martin Affidavit, ¶ 13. Portions of the police report were an "exaggeration" and he "felt pressured." Martin Affidavit, ¶ 14.

{¶43} In the deposition, Martin claims he doesn't remember giving a statement to police at all because he had "passed out in the back of the cruiser." Martin Deposition, 17. When shown his statement, Martin claimed not to recognize it. Martin Deposition, 18. He also could not recall testifying before the grand jury. Martin Deposition, 20. When asked if "they" wanted him to say anything in particular during trial preparation, Martin

replied, "Not necessarily, but I just believe it was—I mean, it was definitely real to me or— you know, it was a big deal * * * *--to me. But they were a little more aggressive at wanting to get them guys off the street." Martin Deposition, 20-21. In other words, appellee and law enforcement were the motivators behind prosecution of the charges, not him. Martin in fact denied that anyone threatened him to lie or exaggerate; he has been threatened in the past for refusal to cooperate with law enforcement, but "[n]ot in this case * * *." Martin Deposition, 32. He felt pressured by prosecutors when he was a juvenile. Martin Deposition, 37. Martin also downplayed his allegation that the police report contained exaggerations; he did not confirm that the police reports were "embellished by the officer" when asked directly; his response was, "I just don't remember speaking with him." Martin Deposition, 47.

{¶44} In short, Martin's affidavit and deposition contain vague prevarications and few solid facts; this record does not support appellant's assertion that Martin was "coerced into lying on the stand." Martin himself does not make such an allegation. We find no support for appellant's contention that he is relieved from demonstrating he was unavoidably prevented from discovering it.

{¶45} Thus, the central inquiry in appellant's motion for a new trial is whether the purported evidence offered by Martin and Walker disclose newly discovered evidence appellant was unavoidably prevented from obtaining. *Barnes III*, 2018-Ohio-1585, supra, ¶ 30. The "phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *Id., citing State v. Williams*, 12th Dist. Butler No. CA2003–01–001, 2003–Ohio–5873, ¶ 21. (Appellant also argues appellee falsely claimed that appellant's

wife is a drug dealer, but the relevance of this argument to the second motion for leave to file a motion for new trial is not evident.)

{¶46} The trial court's ruling in this case does not include an explicit finding that appellant failed to demonstrate he was unavoidably prevented from discovering the evidence. Although Crim.R. 33(B) does indicate that the court must issue "an order * * * finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period," there is no requirement, direct or implied, that a trial court explicitly find in its judgment that a defendant was not unavoidably prevented from discovering evidence. *Barnes III*, 2018-Ohio-1585, supra, ¶ 31, citing *State v. Mosley*, 10th Dist. Franklin No. 07AP–860, 2008–Ohio–951, ¶ 8, appeal not allowed, 118 Ohio St.3d 1509, 2008–Ohio–3369, 889 N.E.2d 1026. "Although the better practice would be for a trial court to give some explanation of the basis for its decision in order to aid appellate review, given the trial court's general denial of appellant's motion for a delayed motion for new trial here, we must presume that the court found appellant had failed to demonstrate that he was unavoidably prevented from discovering the evidence relied upon in his motion." *Id.*

{¶47} Appellant has not offered any explanation that comprises clear and convincing proof that he could not have learned of the existence of Martin's "recantation," such as it is, or Walker's statement within the time prescribed in the exercise of reasonable diligence.

{¶48} Martin's statements, and appellant's arguments, offer no explanation why his purported recantation was not brought to light until 2021. Appellant has not submitted his own affidavit offering any explanation for the delay. "[I]t has been squarely held that

'the use of an affidavit signed outside of the time limit [under Crim.R. 33(B)] that fails to offer any reason why it could not have been obtained sooner is not adequate to show by clear and convincing proof that the evidence could not have been obtained within the prescribed time period.'" *Barnes III*, 2018-Ohio-1585, supra, ¶ 32, citing *State v. Peals*, 6th Dist. Lucas No. L–10–1035, 2010–Ohio–5893, ¶ 25, quoting *State v. Franklin*, 7th Dist. Mahoning No. 09 MA 96, 2010–Ohio–4317, ¶ 20; *State v. Sandoval*, 6th Dist. Sandusky No. S–13–032, 2014–Ohio–4972, ¶ 16. Thus, the affidavits on their face do not support unavoidable delay. *State v. Thompson*, 6th Dist. Lucas No. L–15–1006, 2016–Ohio–1399, ¶ 20, appeal not allowed, 146 Ohio St.3d 1491, 2016–Ohio–5585, 57 N.E.3d 1171, ¶ 20.

{¶49} Neither the deposition transcript nor the affidavits establish a sufficient basis for us to find the trial court abused its discretion in overruling the motion without a hearing.

{¶50} Walker's affidavit includes no evidence to establish that appellant was "unavoidably prevented" from discovering her statement within the time for filing a motion for new trial. *Barnes III*, 2018-Ohio-1585, supra, ¶ 34. The key issue is whether appellant knew or could have discovered through reasonable diligence within the time period provided under Crim.R. 33(B) that Walker had potentially relevant information. *Id.* Walker's affidavit states she knew both appellant and Martin "for a long time," and offers no explanation for her failure to come forward with information. She later moved and "never heard anything" about the incident. "If someone appellant knew well lived so close to the site of the alleged mutual fight, it remains unexplained why defense investigators on behalf of appellant would not have sought out such a witness prior to trial. Appellant bears the burden of establishing, by clear and convincing evidence, that he was

unavoidably prevented from discovering this evidence earlier. He has not shown, through the affidavits submitted, that [Walker] was unknown or 'placed beyond the range of a reasonable investigation by the defense, much less beyond the Subpoena power.'" *Barnes III*, 2018-Ohio-1585, supra, ¶ 34, citing *Veliev v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12–CV–00346, 2014 WL 4805292, *10, (Sept. 26, 2014).

{¶51} No hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay. *Barnes III*, 2018-Ohio-1585, supra, ¶ 35, citing *State v. Baldwin*, 5th Dist. Stark No. 2013CA00134, 2014–Ohio–290, ¶ 24, internal citations omitted. Affidavits filed outside of the 120–day time limit of Crim. R. 33 that fail to offer a sufficient explanation as to why evidence could not have been obtained sooner are inadequate to show that the movant was unavoidably prevented from obtaining the evidence within the prescribed time. *Ambartsoumov v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12–CV– 345, 2014 WL 4805384, *7, internal citations omitted.

{¶52} Appellant failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering, within the prescribed time period, the evidence he is relying on to support his motion and petition. *Barnes III*, 2018-Ohio-1585, supra, ¶ 38. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a delayed motion for new trial. We further find that the trial court did not abuse its discretion in denying the motions without a hearing because the evidence, on its face, did not support appellant's claims that he was unavoidably prevented from timely discovery of the evidence. *Id.*, citing *State v. Davis*, 9th Dist. Lorain No. 12CA010256, 2013–Ohio–846, ¶ 12, internal citation omitted.

{¶53} Appellant's two assignments of error are overruled.

## CONCLUSION

{¶54} Appellant's assignments of error are overruled, and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Baldwin, J., concur.