[Cite as *State v. Scott*, 2025-Ohio-300.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 96-CR-0657 |
| | : | |
| JERMANE SCOTT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 31, 2025

. . . . . . . . . . .

JERMANE SCOTT, Pro Se Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Jermane Scott appeals from an April 19, 2024 order of the Clark County Common Pleas Court denying his motions to vacate judgment or in the alternative motions for leave to file a motion for a new trial. For the following reasons,

we will affirm the judgment of the trial court.

### I.     Facts and Course of Proceedings

{¶ 2} Bertram Thomas was murdered in his home in December 1996.  *State v. Scott*, 1998 WL 350878, *1 (2d Dist. July 2, 1998).   Scott became a suspect "based on the statements of friends and acquaintances who had either been present at the time of the murder or had heard him talk about the murder, the fact that some of the victim's possessions were found at Scott's home, and Scott's use of the victim's checks and credit cards."  *Id.*   A grand jury indicted Scott on the following seven counts related to the death of Thomas: aggravated murder with prior calculation and design; aggravated murder committed in the course of an aggravated robbery; aggravated murder committed in the course of an aggravated burglary; aggravated robbery; aggravated burglary; misuse of a credit card; and forgery.  *Id.*

{¶ 3} Scott was tried by a jury in September 1997 and was found guilty on all counts.  After merging several of the offenses, the trial court sentenced Scott to life imprisonment without parole for aggravated murder, to three years of actual incarceration on a firearm specification, and to one year each for use of a credit card and forgery. Scott appealed from his conviction.  *Id.*   On appeal, Scott argued that his conviction was against the manifest weight of the evidence, the trial court erred by allowing the State to call a witness to the stand that the State did not disclose in a timely manner, the trial court erred when it refused to suppress Scott's videotaped statement to the Springfield Police Department, and the trial court erred by refusing to sustain Scott's motion for a mistrial or

a continuance when it became known that the State failed to disclose statements made by a witness about his conversations with Scott in the days following the murder. We overruled all of Scott's arguments and affirmed the trial court's judgment. *Id.* at *2-6.

**{¶ 4}** On April 12, 2023, Scott filed a "Motion for Leave to File Motion to Vacate and Set Aside Judgment and Conviction Pursuant to O.R.C. § 2953.23 or in Alternative Motion for Leave to File Motion for New Trial Instanter Pursuant to Crim.R. 33." Scott argued that he had new evidence that would show prosecutorial misconduct in the form of a *Brady* violation and suborning perjury. Scott stated that there was evidence that human hairs had been found on the victim during an autopsy and that fingerprints existed. According to Scott, "The trial record will clearly demonstrate that there was no mention of 'human hairs' throughout the entire trial proceedings. There is no chain of custody evidence nor mention [of] any custody logs, however, there are photos of the existence of these human hairs along with an evidence marker." Scott then stated, "The same can be said for the mention of the fingerprint cards or actual fingerprints, said evidence was discussed in the trial transcript, however, there was clearly an absence of any testimony or evidence of facts from a fingerprint image search result from the crime scene." Scott explained that Diane Andrus, a private investigator, had made several records requests over the years that resulted in the discovery of the photographic evidence taken by Dr. Stewart, which showed human hairs and contained an evidence tag number. Scott concluded, "The issues presented here, were discovered at different points after defendant's trial."

**{¶ 5}** Attached to Scott's motion was a sworn statement of facts of Diane K.

Andrus. According to her affidavit, Andrus had assisted Scott in obtaining case files and other pertinent information relating to his case. Andrus stated that between July 15, 2019, and December 17, 2019, she had received a Springfield Police Division Crime Scene Unit Report, an autopsy report prepared by Dr. Robert Stewart, a two-page chain of custody report relating to the autopsy performed by Dr. Stewart, Springfield Police Department Property Receipts listing the property collected from the victim's home, and an autopsy report with a picture of a specimen bag. Andrus explained that, on December 27, 2022, she was going back over many of the documents in Scott's file and decided to take a closer look at the picture of the specimen bag and its label, which she thought contained the bullet found at the victim's home. Instead, she "discovered attached to that label was several pieces of hair." One was long and light in color and one was short and darker in color. Andrus could locate no mention of this hair in the record and no documentation as to where it was found, who had custody of it, where it was sent, where it was examined, or the results of any examination.

{¶ 6} On June 26, 2023, Scott filed another motion to vacate or set aside judgment and conviction or for leave to file a motion for new trial. He attached a document that stated, "Papers Relating to the Inquest Held upon the Body of Bertram Thomas December 3 A.D. 1996." Scott also attached a death certificate stating that Thomas had died on December 3, 1996, and the first page of an autopsy report, which left the date of death blank but stated that the autopsy had been performed on December 7, 1996. Finally, he attached what appear to be printouts of case dockets involving Dr. Dirk Wood, who Scott states was the medical examiner in his case. He argued that this evidence showed that

Thomas was killed on a different date than what was proved at trial, which could have helped prove his innocence.

{¶ 7} The trial court construed Scott's two motions as petitions for postconviction relief and, on April 19, 2024, it denied them. Specifically, it found that they were untimely filed pursuant to R.C. 2953.21(A)(2)(a). The trial court stated that R.C. 2953.23 addresses exceptions to the filing deadline contained in R.C. 2953.21(A)(2)(a), but Scott had not satisfied any of these exceptions. Scott filed a timely notice of appeal from the trial court's April 19, 2024 decision.

II. The Face of Scott's Motions Failed to Support a *Brady* Violation

{¶ 8} A petition for postconviction relief is governed by R.C. Chapter 2953. A motion for a new trial is governed by Crim.R. 33. In his first assignment of error, Scott characterizes his motions as motions for leave to file a motion for new trial and argues the trial court abused its discretion by denying his motions. Regardless of whether Scott's motions should have been construed as petitions for postconviction relief or motions for leave to file a motion for a new trial, we conclude that Scott's motions were properly denied as untimely.

A. Petition for Postconviction Relief

{¶ 9} In his motions, Scott referenced the postconviction relief statutes and Crim.R. 33. "The nature of a motion is not necessarily governed by its title." *State v. Housley*, 2020-Ohio-1143, ¶ 15 (2d Dist.). "Trial courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be

judged." *State v. Howard*, 2021-Ohio-1739, ¶ 26 (2d Dist.), citing *State v. Bush*, 2002-Ohio-3993, ¶ 10. "When a motion is filed subsequent to a direct appeal (or the expiration of time for filing a direct appeal), claims the denial of constitutional rights, seeks to render the judgment of conviction void, and asks for vacation of the judgment and sentence, the motion is properly construed as a petition for postconviction relief." *Housley* at ¶ 15, citing, *e.g., State v. Reynolds*, 79 Ohio St.3d 158, 160 (1997); *State v. Cline*, 2014-Ohio-4503, ¶ 7 (2d Dist.). Scott's motions met the criteria for petitions for postconviction relief.

{¶ 10} R.C. 2953.21 through 2953.23 set forth how a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside pursuant to a petition for postconviction relief. A defendant's petition for postconviction relief is a collateral civil attack on his or her criminal conviction. *State v. Gondor*, 2006-Ohio-6679, ¶ 48. The postconviction relief statutes "affor[d] relief from judgment where the petitioner's rights in the proceedings that resulted in his conviction were denied to such an extent the conviction is rendered void or voidable under the Ohio or United States Constitutions." *State v Kennedy*, 2024-Ohio-66, ¶ 23, citing R.C. 2953.21(A) and *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph four of the syllabus. "A postconviction petition, however, does not provide a petitioner a second opportunity to litigate the conviction." *Id.*, citing *State v. Hessler*, 2002-Ohio-3321, ¶ 32 (10th Dist.).

{¶ 11} R.C. 2953.21(A)(2) provides that a petition for postconviction relief shall be filed within 365 days from the filing of the trial transcripts in the petitioner's direct appeal or, if a direct appeal were not pursued, 365 days after the expiration of the time in which a direct appeal could have been filed. Because 25 years had passed since the date of

Scott's direct appeal, his petition for postconviction relief was filed well beyond the timeframe set forth under R.C. 2953.21. Thus, Scott's petition was untimely.

{¶ 12} R.C. 2953.21(A) precludes the trial court from entertaining an untimely petition for postconviction relief unless the petition meets two conditions. First, Scott must show either that he was unavoidably prevented from discovering the facts upon which the petition relies, or that the United States Supreme Court has recognized a new federal or state right that applies retroactively to him. R.C. 2953.23(A)(1)(a). Second, Scott must show by clear and convincing evidence that a reasonable factfinder would not have found him guilty but for the constitutional error at trial. R.C. 2953.23(A)(1)(b). "Because the timeliness requirement of R.C. 2953.23 is jurisdictional, a trial court does not have jurisdiction to entertain an untimely filed petition for postconviction relief that does not meet the exceptions set forth in R.C. 2953.23(A)(1)." *Kennedy* at ¶ 27, citing *State v. Barrow*, 2020-Ohio-3719, ¶ 7 (8th Dist.); *State v. Bethel*, 2022-Ohio-783, ¶ 20.

{¶ 13} We review de novo whether the trial court had subject-matter jurisdiction to entertain Scott's petition for postconviction relief. *Bethel* at ¶ 20, citing *State v. Apanovitch*, 2018-Ohio-4744, ¶ 36. Because the "unavoidably prevented" requirement in R.C. 2953.23(A)(1) mirrors the "unavoidably prevented" requirement in Crim.R. 33(B), the same analysis applies to untimely petitions for postconviction relief and untimely motions for new trials. *State v. Allen*, 2024-Ohio-970, ¶ 33, citing *Bethel* at ¶ 59.

B. Motion for Leave to File A Motion for New Trial

{¶ 14} We review a trial court's ruling on a motion for leave to file a motion for a

new trial for an abuse of discretion. (Citations omitted.) *State v. Hatton*, 2022-Ohio-3991, ¶ 29. "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19. To the extent Scott's first assignment of error raises questions of law, however, we review them de novo. *State v. Grad*, 2024-Ohio-5710, ¶ 47, citing *State v. Vanzandt*, 2015-Ohio-236, ¶ 6.

**{¶ 15}** Scott sought leave to file a motion for a new trial based on newly discovered evidence and referenced Crim.R. 33, which provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). Further, Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence "shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." A defendant who fails to file a motion for new trial within the prescribed 120-day period must seek leave from the trial court to file a delayed motion. *State v. DeVaughns*, 2018-Ohio-1421, ¶ 18 (2d Dist.).

**{¶ 16}** " 'To obtain leave, defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).' " *Id.*, quoting *State v. Warwick*, 2002 WL 1585663, *2 (2d Dist. July 19, 2002). "A defendant is unavoidably prevented from discovering new evidence if he or she had no

knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial." *State v. Lundy*, 2020-Ohio-1585, ¶ 11 (10th Dist.), citing *State v. Berry*, 2007-Ohio-2244, ¶ 19 (10th Dist.). " 'To allow the trial court to gauge the defendant's diligence, the defendant must describe all investigative actions undertaken within the 120-day period for timely filing a Crim.R. 33(A)(6) motion and explain why he was unavoidably prevented from discovering the evidence before the 120-day period elapsed.' " *State v. Sevilla*, 2023-Ohio-1726, ¶ 14 (10th Dist.), quoting *State v. Cashin*, 2017-Ohio-9289, ¶ 17 (10th Dist.).

   C. Effect of a *Brady* Claim on Scott's Duty to Establish He Was Unavoidably Prevented From Discovering the Evidence Relied on in His Motions

**{¶ 17}** In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court of the United States held that a state violates the Fourteenth Amendment to the United States Constitution when it "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75 (2012), citing *Brady* at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles v.*

*Whitley*, 514 U.S. 419, 433 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). A different result is reasonably probable "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Id.* at 434, quoting *Bagley* at 678.

{¶ 18} "It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense." *Bethel*, 2022-Ohio-783, at ¶ 25, citing *Kyles at* 432-433. Therefore, a defendant seeking to assert a *Brady* claim "is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence." *Id.*, citing *Strickler* at 282-285. Instead, "when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." *Id.*

### D. Analysis

{¶ 19} Scott argues on appeal that he "could not have discovered the exculpatory evidence (human hairs found during the autopsy stage) the medical inquest document, and the fingerprint search image results within 120 days after the jury's verdict, because the State of Ohio suppressed that information and the exculpatory evidence appellant relies on." Appellant's Brief, p. 5. According to Scott, he was not required to show that he could not have discovered the suppressed evidence by exercising reasonable diligence.

{¶ 20} The State responds that Scott did not establish that the State suppressed any evidence. Further, the State contends that Scott failed to meet his burden to show that the evidence would have changed the outcome or called into question confidence in the verdict. Finally, the State argues that Scott could have obtained all the information well within the time frame for filing a petition for postconviction relief or a motion for a new trial if he or his private investigator had filed the public records requests much earlier.

{¶ 21} Scott did not present evidence that he had been unavoidably prevented from discovering the evidence upon which he relied in his motions. In particular, Scott did not provide facts establishing that, in the exercise of reasonable diligence, he could not have learned of the new evidence's existence within the time prescribed for filing a petition for postconviction relief or a motion for new trial. He did not explain any efforts he or his counsel made prior to the expiration of the time for filing a timely petition for postconviction relief or motion for a new trial. *See Sevilla*, 2023-Ohio-1726, at ¶ 14 (10th Dist.). Therefore, the trial court correctly found that Scott had not established any of the exceptions set forth in R.C. 2953.23.

{¶ 22} As noted above, Scott's failure to show he was unavoidably prevented from discovering the new evidence within the requisite time periods would have been excused if he had established a *Brady* violation. However, Scott's motions on their face failed to do so. Nowhere in the affidavits attached to his two motions did Scott or his private investigator aver that the State had possessed the alleged new evidence prior to Scott's trial or that the State had not provided Scott with the evidence before trial through the discovery process. Further, Andrus's affidavit did not state from whom she had received

the picture of the alleged hairs. In fact, Andrus did not provide any facts about where she sent the public records requests that resulted in her receipt of the documents referenced in her affidavit. Scott concedes that there was no mention of any hairs in the autopsy report or any other document he relied on in his motions. Notably, Scott also has not provided any theory of how the existence of two hairs, even if found on the victim during an autopsy, would have undermined confidence in the outcome of the trial. As we explained in our prior decision affirming Scott's underlying convictions, there was overwhelming evidence that Scott had shot and killed Thomas, including eyewitnesses who saw Scott in the same room as the victim immediately before and after the gunshot that killed the victim and testimony of Scott's friends that he had admitted to shooting the victim. *Scott*, 1998 WL 350878, at \*3 (2d Dist.). The potential presence of two hairs on the victim at the time of the autopsy would not undermine confidence in the jury's verdicts.

**{¶ 23}** Similarly, the affidavits in support of Scott's motions failed to aver that the State had relevant fingerprint evidence at the time of trial and that it failed to provide this evidence to Scott through discovery. Interestingly, Scott stated in his motions that fingerprint evidence was mentioned during an interview he had with the police before trial and that there was some mention of fingerprints at trial. If Scott was made aware of fingerprint evidence before and at trial—and did not receive such evidence through discovery—then his counsel should have objected to this during trial and raised this alleged *Brady* violation on direct appeal, which he did not.

**{¶ 24}** Scott also argued that a one-page medical inquest document attached to his second motion incorrectly stated that the autopsy on Thomas occurred on December

3, 1996, despite the fact that his body was not found until December 6, 1996. According to Scott, the date and time of death were material and therefore he was entitled to a new trial. Once again, nowhere in the affidavits submitted with his motions did Scott or Andrus aver that the medical inquest document had been in the State's possession at the time of trial or that Scott had not been provided this document through discovery prior to trial. Also, the one-page "inquest" document on its face did not state who created this document or whose handwriting was on the document. It also is unclear whether the date on this one-page document was intended to mean the date the autopsy was performed or the date of death that was determined after performing the autopsy. Finally, Scott does not put forth a persuasive argument that the existence of this document constituted clear and convincing evidence that no reasonable fact-finder would have found him guilty at trial but for the alleged suppression of this evidence. *See Bethel*, 2022-Ohio-783, at ¶ 40. Therefore, the trial court properly overruled Scott's untimely motions.

{¶ 25} The first assignment of error is overruled.

III.    The Trial Court Was Not Required to Hold An Evidentiary Hearing

{¶ 26} Scott's second assignment of error states:

THE TRIAL COURT ERRED BY NOT CONDUCTING AN EVIDENTIARY HEARING.

{¶ 27} "A defendant is entitled to a hearing on a motion for leave to seek a new trial if he submits documents that on their face support his claim of being unavoidably

prevented from meeting Crim.R. 33's time requirement." *State v. Hiler*, 2017-Ohio-7636, ¶ 12 (2d Dist.), citing *State v. Lanier*, 2010-Ohio-2921, ¶ 16 (2d Dist.). "The post-conviction relief statutes do 'not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required.' " *State v. Rainey*, 2010-Ohio-5162, ¶ 15 (2d Dist.), quoting *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). "Rather, in addressing a petition for post-conviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing." *Id.*, citing *Gondor*, 2006-Ohio-6679, at ¶ 51. A trial court may dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶ 28} In his second assignment of error, Scott does not explain how the trial court erred by not conducting an evidentiary hearing. Rather, he simply re-argues his first assignment of error that he presented sufficient evidence in his motion for a new trial to warrant a new trial. As explained above, however, Scott did not present evidence on the face of his motions to support a *Brady* violation. As such, the trial court was not required to hold an evidentiary hearing before denying his motions.

{¶ 29} The second assignment of error is overruled.

IV.     Conclusion

{¶ 30} Having overruled both of Scott's assignments of error, we will affirm the

judgment of the trial court.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.