[Cite as *State v. Scott*, 2025-Ohio-3296.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-4 |
| Appellee | : | |
| | : | Trial Court Case No. 96-CR-0657 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JERMANE SCOTT | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on September 12, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
CLARK C.A. No. 2025-CA-4

JERMANE SCOTT, Appellant, Pro Se
CHRISTOPHER P. LANESE, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Defendant-Appellant Jermane Scott appeals pro se from a trial court judgment overruling his successive petition for postconviction relief. Scott does not address the court's decision on postconviction relief. Rather, he contends the court erred by applying the wrong standard in denying his motion for leave to file a motion for a new trial (which the court did not address). Scott further contends that his motion for leave should have been granted because the State destroyed biological evidence that was the subject of a meritorious application for postconviction DNA testing. In responding, the State argues that Scott's arguments are barred by res judicata.[1]

{¶ 2} After reviewing the record, we conclude that Scott's claims, however classified, are barred by res judicata because the matters at issue were previously litigated and decided adversely to Scott. In addition, any error in the court's failure to consider the motion for leave to file a motion for a new trial was harmless, as the claims raised therein were barred by res judicata. Accordingly, the judgment of the trial court is affirmed.

I. Facts and Course of Proceedings

{¶ 3} In a recent opinion concerning Scott's postconviction claims, we related the following factual background of his underlying criminal case:

---

[1] Scott filed an untimely reply brief and did not ask the court for an extension of time as required by App.R. 14(B) and Second Dist.Loc.R. 2.22. Therefore, we will not consider the reply brief.

Bertram Thomas was murdered in his home in December 1996. *State v. Scott*, 1998 WL 350878, *1 (2d Dist. July 2, 1998). Scott became a suspect "based on the statements of friends and acquaintances who had either been present at the time of the murder or had heard him talk about the murder, the fact that some of the victim's possessions were found at Scott's home, and Scott's use of the victim's checks and credit cards." *Id*. A grand jury indicted Scott on seven counts related to the death of Thomas: aggravated murder with prior calculation and design; aggravated murder committed in the course of an aggravated robbery; aggravated murder committed in the course of an aggravated burglary, aggravated robbery; aggravated burglary; misuse of a credit card; and forgery. *Id*. Scott was tried by a jury in September 1997 and was found guilty on all counts.

After merging several of the offenses, the trial court sentenced Scott to life imprisonment without parole for aggravated murder, to three years of actual incarceration on a firearm specification, and to one year each for use of a credit card and forgery. Scott appealed from his convictions. *Id*. On direct appeal, Scott argued that his conviction was against the manifest weight of the evidence, the trial court had erred by allowing the State to call a witness to the stand that the State did not disclose in a timely manner, the trial court had erred when it refused to suppress Scott's videotaped statement to the Springfield Police Department, and the trial court had erred by refusing to sustain Scott's motion for a mistrial or a continuance when it became known that the State failed to disclose statements made by a witness about his

conversations with Scott in the days following the murder. We overruled all of Scott's arguments and affirmed the trial court's judgment. *Id*. at *2-6.

*State v. Scott*, 2025-Ohio-299, ¶ 2-3 (2d Dist.) ("*Scott I*").

**{¶ 4}** In April 2023, Scott filed an application for postconviction DNA testing per R.C. 2953.72 and asked for certain evidence to be tested for DNA. These items included human hairs purportedly found on the victim's body during the autopsy, a ceramic frog, and cigarette butts. *Id*. at ¶ 4. After requiring the State to look for evidence, the trial court denied the application "because the State did not possess any hair/fiber evidence and because the only biological material that was available for testing [a vial of the victim's blood] would not have been outcome determinative." *Id*. at ¶ 5-6. We agreed with the trial court and affirmed the judgment. *Id*. at ¶ 7-23.

**{¶ 5}** Earlier in April 2023, Scott had filed a " 'Motion for Leave to File Motion to Vacate and Set Aside Judgment and Conviction Pursuant to O.R.C. § 2953.23 or in Alternative Motion for Leave to File Motion for New Trial Instanter Pursuant to Crim.R. 33.' " *State v. Scott*, 2025-Ohio-300, ¶ 4 (2d Dist.) ("*Scott II*"). In this motion, Scott "argued that he had new evidence that would show prosecutorial misconduct in the form of a *Brady* violation and suborning perjury. Scott stated that there was evidence that human hairs had been found on the victim during an autopsy and that fingerprints existed." *Id*. In June 2023, Scott filed another motion to set aside or vacate his conviction or allow leave to file a motion for new trial. This motion pertained to a date on the autopsy report, which allegedly showed the victim had been killed on a different date than was proven at trial. *Id*. at ¶ 6.

**{¶ 6}** After construing these motions as ones for postconviction relief, the court denied them, finding "they were untimely filed pursuant to R.C. 2953.21(A)(2)(a)." *Id*. at ¶ 7. In addition, the court said that "R.C. 2953.23 addresses exceptions to the filing deadline

contained in R.C. 2953.21(A)(2)(a), but Scott had not satisfied any of these exceptions." *Id*. Again, we affirmed the trial court, concluding there was no evidence of a *Brady* violation and that the trial court was not required to hold an evidentiary hearing before denying Scott's motions. *Id*. at ¶ 8-30. Both of our opinions were issued on January 31, 2025; the trial court's decisions in these matters had been filed on April 19, 2024.

{¶ 7} A little more than two weeks after the court's April 19 decisions, Scott filed another motion for leave to file a motion to vacate or set aside his conviction pursuant to R.C. 2953.23, or alternatively for leave to file a motion for a new trial under Crim.R. 33 ("2024 Motion"). This motion was based on the State's alleged post-trial destruction of "biological evidence that would have been the subject of [a] meritorious application for post-conviction DNA testing." *Id*. at p. 2. The "biological" evidence in question was "alleged hair/fiber evidence" that was portrayed on a photo. *Id*. at p. 4. Scott also raised the matter of latent fingerprints found on the victim's stolen car. *Id*. at p. 11. However, his primary focus was on the hair/fiber evidence.

{¶ 8} After the State did not respond to the motion, the trial court filed an entry denying Scott's postconviction petition for relief. Post-Conviction Relief Entry (Dec. 27, 2024) ("Entry"). On February 4, 2025, Scott filed a notice of appeal from the court's decision.

## II. Jurisdictional Issues

{¶ 9} Scott raises two assignments of error. Before we discuss these alleged errors, we must consider whether we have jurisdiction over the appeal, because the notice of appeal clearly was not filed within 30 days of the trial court's final entry as required by App.R. 4(A)(1). Furthermore, to the extent that App.R. 5(A) might apply, Scott failed to file a motion seeking leave to file a delayed appeal. In order to vest jurisdiction in an appellate court, a party must file a timely notice of appeal. *State v. Bray*, 2017-Ohio-118, ¶ 9 (2d Dist.) The

law is well-established that we may raise jurisdictional issues on our own motion. *E.g., Care Risk Retention Group v. Martin*, 2010-Ohio-6091, ¶ 97 (2d Dist.).

{¶ 10} Scott claimed his trial court motion was being brought under R.C. 2953.23 or, alternatively, sought leave to file a motion for a new trial under Crim.R. 33. Under R.C. 2953.21(A), petitions for postconviction relief may be filed, but "[e]xcept as otherwise provided in section 2953.23 of the Revised Code, . . . shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication. . . ." R.C. 2953.21(A)(2)(a). In turn, under R.C. 2953.23(A), which applies where a postconviction petition has not been brought within the time limits in R.C. 2953.21(A) or is a successive petition, the court may exercise jurisdiction only if certain requirements are met. That is the situation here, as Scott's 2024 Motion was filed many years after the transcript was filed in his direct appeal and was also a successive petition.

{¶ 11} "A postconviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994), citing *State v. Crowder*, 60 Ohio St.3d 151 (1991). Consequently, courts have held that "App.R. 4(A)(1) and (3) control appeals from the denial of a postconviction relief petition." *State v. Brisco*, 2020-Ohio-4582, ¶ 11 (10th Dist.). As noted, under App.R. 4(A)(1), notices of appeal must be filed within 30 days after a final entry is filed. That did not occur here.

{¶ 12} However, in civil cases, " 'if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) . . . begin[s] to run on the date when the clerk actually completes service.' " *Brisco* at ¶ 11, quoting App.R. 4(A)(3). Thus, " 'the filing of a notice of appeal from the denial

of a petition for post-conviction relief under R.C. 2953.21 must be made within 30 days of the entry of judgment where there is compliance with Civ.R. 58(B), or within 30 days of notice of the judgment and its entry if service is not made within the three day period of Civ.R. 58(B).' " *Id*. at ¶ 13, quoting *State v. Williams*, 2006-Ohio-842, ¶ 6 (10th Dist.). This would also apply to petitions brought under R.C. 2953.23, as they are civil in nature as well.

{¶ 13} Civ.R. 58(B) contains certain requirements, including that: "When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ. R. 5(B) and note the service in the appearance docket." The rule further states that: "Upon serving the notice and notation of the service in the appearance docket, the service is complete."

{¶ 14} None of these things occurred in the case before us. The trial court did not make the required endorsement on the judgment entry, and the clerk did not make a notation in the appearance docket concerning the fact that it had served the required notice. In this regard, we note that there is no such notation in the docket sheet the clerk transmitted to us, nor is there any such notation in the clerk's online docket. As a result, while Scott's notice of appeal was not filed within 30 days of the final entry, Scott's appeal of the court's decision was timely insofar as the decision on the petition for postconviction relief is concerned.

{¶ 15} On the other hand, Crim.R. 33 motions for new trials in criminal cases are not civil in nature but are part of the criminal case. *State v. Struckman*, 2021-Ohio-1043, ¶ 8 (1st Dist.); *State v. Bethel*, 2022-Ohio-783, ¶ 44 (noting "a motion for a new trial is not a collateral challenge - a motion for a new trial is an attempt to void or correct the judgment as provided by law under Crim.R. 33"). Furthermore, Civ.R. 58(B) does not apply to criminal judgments.

*State v. Mitchell*, 2017-Ohio-8440, ¶ 18 (11th Dist.), citing *State ex rel. Ford v. Adm. Judge of Cuyahoga Cty. Court of Common Pleas*, 2013-Ohio-4197, ¶ 6 (8th Dist.). Instead, Crim.R. 32(C) applies, which only requires judgments to be signed and entered on the journal. *Ford* at ¶ 6. That was done here.

{¶ 16} If appeal time lapses in this situation, a defendant's remedy is to file a motion for delayed appeal under App.R. 5(A). *See State ex rel. McKinney v. Defiance Cty. Court of Common Pleas*, 2009-Ohio-4693, ¶ 1; *Ford* at ¶ 6. However, Scott did not file a motion for delayed appeal. In *Mitchell*, the court was faced with a similar situation and declined to consider assignments of error related to the part of the trial court decision that was not timely appealed. *Mitchell* at ¶ 20. The jurisdictional situation here is more complicated, however, because the trial court did not actually rule on Scott's alternative motion for a new trial; instead, the court construed Scott's 2024 Motion as one for postconviction relief. Entry at p. 1.

{¶ 17} In *Bethel*, the Supreme Court of Ohio considered the issue of trial courts recasting or reclassifying postconviction matters. The defendant in that case had been convicted of two counts of aggravated murder and had been sentenced to death in 2003. In 2018, he filed a motion for leave to file a motion for a new trial under Crim.R. 33(B); he also filed a successive postconviction petition under R.C. 2953.23 as well as a motion for a new trial. These pleadings were all based on the State's suppression of an investigation report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Bethel,* 2022-Ohio-783, at ¶ 2, 9, and 14. The trial court found it lacked jurisdiction over the successive petition and also denied the motion for leave and the motion for new trial. After the court of appeals affirmed that decision, the Supreme Court of Ohio accepted jurisdiction. *Id*. at ¶ 15.

{¶ 18} In considering the postconviction petition, the Supreme Court of Ohio found the defendant's documents established a prima facie case that the State had suppressed evidence. *Id*. at ¶ 30. However, it also found the trial court lacked jurisdiction over the successive petition because the defendant failed to show "by clear and convincing evidence that no reasonable fact-finder would have found him guilty or eligible for the death sentence but for constitutional error at trial." *Id*. at ¶ 41. Concerning denial of the motion for leave, the State argued that the remedy in R.C. 2953.21 is exclusive and that the motion for leave was a collateral challenge that also had to be treated as a successive petition over which the trial court lacked jurisdiction. *Id*. at ¶ 42. The Supreme Court of Ohio rejected this argument, finding that the motion was not a collateral challenge but was a direct challenge in the criminal case. *Id*.at ¶ 44-45.

{¶ 19} In addition, the court rejected the State's claim that the trial court could choose to treat or analyze the motion for leave as a postconviction petition, as had been allowed in *State v. Reynolds*, 79 Ohio St.3d 158 (1997). The court noted that it had limited *Reynolds* to its facts in *State v. Bush*, 2002-Ohio-3993. *Id.* at ¶ 46, discussing *Bush* at ¶ 10-11. Specifically, the court remarked that it had "explained that *Reynolds* was unique because it involved an 'irregular "no name" motion[ ]' in search of an identity" and had "determined that it was proper to categorize the motion as a postconviction petition in the absence of any other obvious standard for analyzing it." *Id.*, quoting *Bush* at ¶ 10. Thus, courts may not recharacterize pleadings where obvious standards exist for analyzing them.

{¶ 20} Applying this concept here, the trial court should not have treated Scott's 2024 Motion simply as a postconviction petition, as it was labeled alternatively as a Crim.R. 33 motion for leave to file a motion for a new trial. *Compare State v. Jury*, 2022-Ohio-4419, (6th Dist.). In *Jury*, the court agreed with a defendant that the trial court had erred in considering

his Crim.R. 33 motion as a postconviction petition. However, the court of appeals also found the error harmless. *Id*. at ¶ 42.

{¶ 21} Because the trial court here did not consider the Crim.R. 33 aspect of Scott's pleading, there is no apparent barrier to our consideration of this appeal. Specifically, since the trial court only entered judgment on a civil proceeding, the appeal was timely filed. Admittedly, the situation is complicated further because Scott's assignments of error are directed toward the motion for leave to file a motion for a new trial rather than the court's actual decision and standards that apply to postconviction petitions brought under R.C. 2953.23.

{¶ 22} For purposes of convenience, we will address both of Scott's assignments of error together.

### III. Discussion

{¶ 23} Scott's first and second assignments of error state:

The Trial Court Abused Its Discretion by Applying the Wrong Legal Standard to Deny Appellant's Motion for Leave to File Motion for New Trial.

A Motion for Leave to File a Motion for New Trial Should Be Granted Where a Defendant Proves That the State of Ohio, in Violation of Ohio Law, Destroyed Biological Evidence That Was the Subject of a Meritorious Application for Postconviction DNA Testing.

{¶ 24} Under the first assignment of error, Scott contends that the trial court erred by "side-stepping" the two-step process that is used in analyzing motions for new trial based on newly discovered evidence. Specifically, Scott argues the trial court was required to first consider whether he had been unavoidably prevented from discovering the evidence in question before considering the merits of the new trial motion.

{¶ 25} Under the second assignment of error, Scott argues that he established that he had been unavoidably prevented from discovering the post-trial destruction of exculpatory evidence. In this regard, Scott relies on an affidavit the Clark County Common Pleas Clerk of Courts filed on December 19, 2024. As noted, both of Scott's arguments address relief under Crim.R. 33(A)(6), not his successive postconviction petition under R.C. 2953.23.

{¶ 26} As background, "[i]n order to file a motion for new trial beyond the 120-day time limitation specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion." *State v. Moore*, 2018-Ohio-318, ¶ 16 (2d Dist.), citing *State v. Lanier*, 2010-Ohio-2921, ¶ 15 (2d Dist.). Further, "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *Bethel*, 2022-Ohio-783, at ¶ 41, citing *State v. Brown*, 2011-Ohio-1080, ¶ 14 (8th Dist.). "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *State v. Hatton*, 2022-Ohio-3991, ¶ 30.

{¶ 27} While Scott is correct in asserting that a trial court must first decide whether to grant a new trial before considering the merits, this is irrelevant here, because the court did not consider the motion for leave to file a motion for a new trial. Instead, it treated the matter as a postconviction petition, which would have been brought under R.C. 2953.23. The only things the trial court considered in its decision on this point were whether Scott proved the biological evidence was "materially exculpable," which would be a due process violation, or if not, whether the evidence was "potentially exculpable." Entry at p. 1. The court remarked that in the latter situation, Scott would have the burden of proving bad faith on the State's

part in order to establish a due process violation. *Id*. The court then stated that Scott had failed to show the evidence was materially exculpatory and had only argued the evidence was potentially exculpable. Finally, the court found no due process violation because Scott failed to prove the State had acted in bad faith. *Id*. at p. 1-2.

{¶ 28} For purposes of evaluating the matter the trial court actually decided, courts may only entertain untimely or successive petitions under R.C. 2953.23(A) if certain requirements are met. As relevant here, the requirements are that the petitioner "shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and also "shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A)(1)(a) and (b). " 'The "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1).' " *Bethel*, 2022-Ohio-783, at ¶ 59, quoting *State v. Barnes*, 2018-Ohio-1585, ¶ 28 (5th Dist.).

{¶ 29} The trial court's decision did not discuss these requirements. Instead, the court based its decision on the conclusion that no due process violation existed because the biological evidence was at best potentially exculpatory and the State had not acted in bad faith. The Supreme Court of Ohio has held that " 'when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the "unavoidably prevented" requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies.' " *State v. Johnson*, 2024-Ohio-134, ¶ 16, quoting *Bethel* at ¶ 25. In *Johnson*, the court stressed that the burden is on the petitioner, who "may make the required showing [of being unavoidably prevented] either by establishing a violation under *Brady*, 373 U.S. 83, . . . or by

demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence." *Id*. at ¶ 18.

**{¶ 30}** By concluding no due process violation existed under *Brady*, the trial court eliminated one method; it did not address the other. However, this is irrelevant, as is any other error by the trial court, because Scott's claims (both in his successive petition and his motion for leave to file under Crim.R. 33) are barred by res judicata. "Res judicata provides that a final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue for parties and their privies in the same or any other judicial tribunal." *State ex rel. Rose v. Ohio Dept. of Rehab. & Corr.*, 91 Ohio St.3d 453, 455 (2001), citing *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 604 (1999). While res judicata "normally applies to any issue that was raised or could have been raised on direct appeal," it also applies " 'to all postconviction proceedings in which an issue was or could have been raised.' " *State v. Heid*, 2016-Ohio-2756, ¶ 18 (4th Dist.), citing *State v. Burton*, 2014-Ohio-2549, ¶ 17 (4th Dist.), quoting *State v. Montgomery*, 2013-Ohio-4193, ¶ 42 (8th Dist.). *Accord State v. Becraft*, 2019-Ohio-2348, ¶ 13-15 (2d Dist.).

**{¶ 31}** From reviewing our opinion in *Scott II*, it is clear that the issues raised in the current filings are the same as those already litigated and decided against Scott. Prior to *Scott II*, Scott had filed postconviction claims under R.C. 2953.23 and a motion for leave to file a motion for a new trial. These claims were based on an alleged *Brady* violation due to the discovery of new evidence, i.e., hair fibers in a photograph and latent fingerprints. *See Scott II*, 2025-Ohio-300, at ¶ 4, 5, 9, 21, 22, and 23. We rejected those claims, noting that:

Scott did not present evidence that he had been unavoidably prevented

from discovering the evidence upon which he relied in his motions. In

particular, Scott did not provide facts establishing that, in the exercise of reasonable diligence, he could not have learned of the new evidence's existence within the time prescribed for filing a petition for postconviction relief or a motion for new trial. He did not explain any efforts he or his counsel made prior to the expiration of the time for filing a timely petition for postconviction relief or motion for a new trial. *See [State v.] Sevilla*, 2023-Ohio-1726, at ¶ 14 (10th Dist.). Therefore, the trial court correctly found that Scott had not established any of the exceptions set forth in R.C. 2953.23.

As noted above, Scott's failure to show he was unavoidably prevented from discovering the new evidence within the requisite time periods would have been excused if he had established a *Brady* violation. However, Scott's motions on their face failed to do so. Nowhere in the affidavits attached to his two motions did Scott or his private investigator aver that the State had possessed the alleged new evidence prior to Scott's trial or that the State had not provided Scott with the evidence before trial through the discovery process. Further, [the investigator] Andrus's affidavit did not state from whom she had received the picture of the alleged hairs. In fact, Andrus did not provide any facts about where she sent the public records requests that resulted in her receipt of the documents referenced in her affidavit. Scott concedes that there was no mention of any hairs in the autopsy report or any other document he relied on in his motions. Notably, Scott also has not provided any theory of how the existence of two hairs, even if found on the victim during an autopsy, would have undermined confidence in the outcome of the trial. As we explained in our prior decision affirming Scott's underlying convictions, there

was overwhelming evidence that Scott had shot and killed Thomas, including eyewitnesses who saw Scott in the same room as the victim immediately before and after the gunshot that killed the victim and testimony of Scott's friends that he had admitted to shooting the victim. *Scott*, 1998 WL 350878, at *3 (2d Dist.). The potential presence of two hairs on the victim at the time of the autopsy would not undermine confidence in the jury's verdicts.

Similarly, the affidavits in support of Scott's motions failed to aver that the State had relevant fingerprint evidence at the time of trial and that it failed to provide this evidence to Scott through discovery. Interestingly, Scott stated in his motions that fingerprint evidence was mentioned during an interview he had with the police before trial and that there was some mention of fingerprints at trial. If Scott was made aware of fingerprint evidence before and at trial— and did not receive such evidence through discovery—then his counsel should have objected to this during trial and raised this alleged *Brady* violation on direct appeal, which he did not.

*Id.* at ¶ 21-23.

{¶ 32} As we indicated, the claims that Scott made in 2024 in the trial court concerning his request for leave to file a motion for a new trial and for relief under R.C. 2953.23 were based on the hair/fibers on the victim and latent fingerprints. Scott offered nothing additional in the 2024 Motion beyond what he filed in 2023. He did not attach additional affidavits or evidence, nor did he make any new argument. Instead, he asserted the same arguments he made in the 2023 motions. Since the matters alleged here are the same, res judicata barred consideration of Scott's successive petition as well as the motion

for leave under Crim.R. 33. Thus, while the trial court failed to rule on the motion for leave, any error was harmless, as further litigation was barred. Remanding the case would be futile.

{¶ 33} As noted, Scott has also raised an issue pertaining to a December 14, 2024 affidavit of the clerk of courts. In the affidavit, the clerk indicated that she had been unable to locate some transcripts from Scott's trial and that some transcripts may have potentially been destroyed. The clerk also stated that she did not have any evidence from the case as the common pleas court had "cleared out" and "seized" the Court of Appeals evidence room pursuant to a 2019 court order. Scott has attached a copy of the affidavit to his brief. According to Scott, this unavoidably prevented him from knowing the State had destroyed exculpatory evidence. Appellant's Brief, p. 4-5.

{¶ 34} This issue was not raised in the trial court, and the clerk's affidavit was not part of the record transmitted to this court. Under well-established law, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. *Accord State v. Mize*, 2022-Ohio-3163, ¶ 58 (2d Dist.). Furthermore, the items in question were under the control of the common pleas court, not the prosecutors.

{¶ 35} As a final matter, Scott incorrectly alleges that his postconviction application for DNA testing was meritorious. It was not. The DNA issue had previously been raised in the trial court and on appeal, and we found no abuse of discretion in the denial of Scott's application for DNA testing. *Scott I*, 2025-Ohio-299, at ¶ 8-21.

{¶ 36} Based on the preceding discussion, both of Scott's assignments of error are overruled.

## IV. Conclusion

{¶ 37} Both of Scott's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.